## Williams, Brown & Co. v. John H. Leslie & Co.

1. RESCISSION OF CONTRACTS—*Can Not be in Part.*—An entire contract can not be rescinded in part.

2. SALES—*Breach of Warranty—Remedy.*—A merchant in Chicago bought by sample, through a broker, of merchants in San Francisco, eleven car loads of raisins, and advanced a portion of the purchase price. Upon their arrival in Chicago it was found that a part of them was not in quality according to the contract, but the buyers received them, and afterward notified the sellers of the fact. *It was held*, that having accepted the goods without complaint, except as to the quality, the buyers could not dispose of them on account and risk of the sellers and credit them only with the net proceeds less commissions, etc., and recover from them the difference between such proceeds and what the buyers had advanced. If there was a breach of warranty the buyers were entitled to show it in defense, and if their damages exceeded the amount of the unpaid purchase price, to recover it under a plea of set-off.

**Assumpsit,** for balance due on goods sold, etc. Appeal from the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the March term, 1896. Reversed and remanded. Opinion filed June 29, 1896.

PECK, MILLER & STARR, attorneys for appellant.

This was an executed contract and could not be rescinded for breach of warranty. Benjamin on Sales (2d Am. Ed.), Sec. 358; Brown v. Hare, 3 H. & N. 484; Enc. of Law, Vol. 28, p. 16; Ib., p. 819; Sutherland on Damages (1st Ed.), Vol. 2, p. 417; Benjamin on Sales (2d Am. Ed.), Sec. 888; Merrick v. Wiltse, 37 Minn. 41; Owens v. Sturges, 67 Ill. 366; Crabtree v. Kile, 21 Ill. 180.

It was an entire contract and could not be rescinded in part. Couston v. Chapman, Law Rep. 2; S. C. App. 250; Mansfield v. Trigg, 133 Mass. 350.

No rescission can be shown under the pleadings. Streator Tile Works v. Coe, 53 Ill. App. 483; Enc. of Law, Vol. 28, p. 819.

The defendant is estopped from showing rescission by his acts:

(1.) By failure to give notice of rejection of goods im-

mediately upon discovery of the breach and by exercising acts of ownership over them.   Underwood v. Wolf, 131 Ill. 425; Owens v. Sturges, 67. Ill. 366; Wheelock v. Berkely, 138 Ill. 157; Benjamin on Sales (4th Am. Ed.), Sec. 1356; Brown v. Reinhold, 41 Ill. App. 599.

(2.)   By retaining the property and exercising acts of ownership over it.   Benj. on Sales (4th Am. Ed.), Sec. 1356; Wheelock v. Berkely, 138 Ill. 157; Brown v. Reinhold, 41 Ill. App. 599.

This was a sale by sample, the only warranty being that the bulk should conform to the sample.   Appellee complied with all the conditions of the contract.   Benj. on Sales (2d Ed.), Sec. 273; Ib., Sec. 648.

No damages for breach of warranty are shown by the evidence.   Chitty on Cont. (11th Ed.), 652; McClure v. Williams, 65 Ill. 394; Wheelock v. Berkely, 138 Ill. 157; Suth. on Dam., Vol. 2, p. 422.

The judgment of the court below can not be sustained as awarding damages for breach of warranty.   Crabtree v. Kile, 21 Ill. 180.

The damages allowed defendant should have been deducted from the amount due plaintiff on the contract. Chitty on Cont. (11th Ed.), 652; McClure v. Williams, 65 Ill. 394; Owens v. Sturges, 67 Ill. 366; Aultman v. Weber, 28 Ill. App. 93.

John M. Gartside, attorney for appellees, contended that the contract was executory (Am. & Eng. Enc. of Law, Vol. 3, 824; Anderson's Dict. of Law, 248), and several.   Am. & Eng. Enc. of Law, Vol. 3, 925; Bank of Antigo v. Union T. Co., 149 Ill. 343; Harber Bros. Co. v. Moffatt Cycle Co., 151 Id. 84.   The *lex loci contractus* governs.   Norris v. Harris, 15 Cal. 226; Moore v. Bonnet, 40 Cal. 251.

The goods must correspond to kind, grade, quality and description called for by contract.   Anson on Contracts (2d Am. Ed.) 394; Hubbard v. George, 49 Ill. 275; Shields v. Reibe, 9 Brad. 598.

The vendee had a reasonable time to inspect goods after

delivery. Doane v. Dunham, 65 Ill. 512; Shields v. Riebe, 9 Brad. 598.

The goods shipped being different from those contracted for, the buyer was not bound to accept, but gave notice in reasonable time of refusal to accept, and thereby avoid liability. Diversy v. Kellogg, 44 Ill. 119.

The appellee should recover difference between contract price and market price of raisins at time and place of delivery. Benj. on Sales, page 1233, note; Thorne v. McVeagh, 75 Ill. 81; Crabtree v. Kile, 21 Ill. 180; Kendall v. Young, 40 Ill. App. 392; Carpenter v. First Natl. Bank, 119 Ill. 353; Trunkey v. Hedstrom, 131 Ill. 204; Smith v. Dunlap, 12 Ill. 184; Kitzinger v. Sanborn, 70 Ill. 146; McNaught v. Dodson, 49 Ill. 447; Sanborn v. Benedict, 78 Ill. 310; Kadish v. Young, 108 Ill. 176; Roebling Sons Co. v. Lockstitch Co., 130 Ill. 660.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

Through a broker in San Francisco the appellees, merchants in Chicago, bought unseen, though samples were shown, of the appellants, merchants in San Francisco, eleven carloads of raisins of described kinds and qualities, to be shipped during October, 1891.

From November 6th to November 18th the raisins arrived. On the arrival of the first carload or loads, the appellees telegraphed to the broker that such as had arrived were not according to contract, and to " advise disposition;" but the first notice from the appellees direct to the appellants was by a letter of November 18, 1891, as follows :

" MESSRS. WILLIAMS, BROWN & Co., San Francisco, Cal.

GENTLEMEN : Your telegram of the 17th just received, asking if we had remitted for balance due on raisins. In reply we wired you that we had not remitted, that some of the raisins were not according to contract, sending samples to Lovell to-day. We wired Mr. Lovell on the 6th that the first car of three crown loose had arrived and that the goods were not prime according to contract, and on the 9th we wrote him more fully in regard to them.

Williams, Brown & Co. v. John H. Leslie & Co.

On the 10th we wrote him that we had received a letter from our Milwaukee man saying that his car had arrived and was not satisfactory. On the 11th we wired him again that the bag raisins were very irregular, especially the two crown, buyers rejecting them right and left. Mr. Lovell wrote us that he thought the raisins were all right, and on the 13th we wrote him that we still insisted that the raisins were not what they should be, especially the two crown goods. Since then we have received complaints from our agents in Omaha, Kansas City and Minneapolis, and we are sending samples to-day of the different cars, excepting the Sultanas which have just arrived, after being out since October 23d, and the two cars of the two crown loose which are now at the depot. We think you will agree with us, when you see these samples, that they are not what they should be, especially the two crown goods. We find that car No. 5186, three crown, that came to Chicago, is very fair, and we will probably conclude to remit you balance on this car and also the Sultanas, providing we find that they are all right. The two crown goods sent to Omaha are pretty fair, but the three crown are not what they should be. We will write to Mr. Lovell to-day in regard to the matter, and no doubt, when you see the samples, you will admit that we have good grounds for complaint.

Yours truly,

John H. Leslie. "

Doubtless, as the raisins arrived, if they were not such as the contract called for, the appellees might have refused to receive them; but this letter contains no hint of rejecting any of them, and if it did, there is no authority justifying the acceptance of a part, picking out such as suit, and rejecting the residue of goods sent under one single contract. Many cases are collected in Benjamin on Sales (Ed. 1892), 690.

The ambiguous phrase "advise disposition," in the telegram to the broker, was no notice, even to him, that the appellees rejected the raisins.

They paid three-fourths of the price before they had any

opportunity to inspect the raisins. They were entitled to a reasonable time and opportunity to inspect them, and if not according to the contract, to reject them; Doane v. Dunham, 65 Ill. 512; 79 Ill. 131; but it was not to their interest to reject them, unless the market price had fallen, but to take them, and hold the appellants responsible for the breach of warranty, if breach there was, under the doctrine so fully elaborated in Underwood v. Wolf, 131 Ill. 425.

Now for breach of warranty the measure of damages is " the difference in the value of the property at the time the warranty was broken, and what it would have been had the warranty been true " (McClure v. Williams, 65 Ill. 390), enhanced sometimes by special circumstances. Thorne v. McVeagh, 75 Ill. 81. The question is not before us upon this record whether any special circumstances should be considered.

This case was tried upon the theory that the appellees had the right, and had exercised it, to refuse to accept the raisins, and to dispose of them on account and risk of the appellants, and so credit them only with the net proceeds, less commissions to the appellees, and recover from the appellants the difference between such proceeds and what the appellees had paid, with interest on such difference. In fact, the appellees never did reject the raisins; they only complained of the quality. They dealt with them as their own much more in detail than did the buyer of the oil cake in Chapman v. Morton, 11 M. & W. 534 (Eng. Exch.).

Without going through the voluminous evidence showing the disposition of the raisins in Milwaukee, Minneapolis, Omaha and Kansas City, the letters of the appellees show that they gave to the appellants no direct notice of rejection until more than two months after all the raisins had arrived, and many of them had been sold, so that it was impossible to restore them to the appellees. Two of the letters are as follows:

"CHICAGO, Dec. 30, 1891.

Messrs. Williams, Brown & Co., San Francisco, Cal.

GENTLEMEN: Your favors of the 23d and 26th duly to

hand and contents noted. The car of two crown loose raisins that Mr. Kittle examined at the depot was the last car that you shipped, and although we admitted that the quality was all right, we refused to accept this car, because it was not shipped in October, according to contract. Mr. Kittle misunderstood us if he thought we stated that two cars were shipped in November, as we have no recollection of making any such claim. We never intimated to Mr. Lovell that it would be all right for you to ship this car in November, therefore he had no authority from us to tell you to go ahead and ship it. We are not holding back your money on these goods because we are at such a long distance from you, but simply because the goods shipped us, with but one or two exceptions, are not according to contract.

You claim that we did not begin to make objections until three or four weeks after we had gotten all the goods in, whereas, by referring to our letter book, we find that we wired Mr. Lovell November 6th, as follows: 'Three crown loose arrived. Are not prime according to contract. Raisins too small. Advise disposition.' Now these cars left the coast October 25th, and we examined them promptly on arrival, and there was no delay in reporting the result of our examination. We also wired Mr. Lovell again on the 11th as follows: 'Bag raisins very irregular, especially two crown; buyers rejecting right and left.' The first car of two crowns was shipped to Chicago October 28th, therefore it could not have been here very long when we sent this telegram of November 11th. The second car of two crowns was shipped to Chicago October 31st, and the third car November 2d, and we admit that we were a little slow in reporting on these two last cars, as the railroad company would not let us examine them without taking up the drafts, and we did not care to pay out any more money on them, until we found out what we were going to do about the other cars. We sent samples of all the different lots to Mr. Lovell November 18th, excepting these last two cars, which was just as soon as we could get them together, as we had to send to our branch houses for samples of the cars they received.

We note that you are drawing on us for the balance still unpaid on the ten cars, and we certainly shall decline to pay the draft. We told Mr. Kittle that we were willing to arbitrate the matter, and we are still willing to do so, but we do not see any reason why we should pay for the goods in full beforehand. In buying goods, three-quarter sight draft, balance on arrival of the goods, our object is to be on the safe side in case the goods are not according to contract; therefore it would be very foolish to pay the full amount after we find that goods are not according to contract, and then arbitrate afterward; and we don't think we ever heard of a case being settled in this way. Mr. Kittle informed us that he expected to be back here in a few weeks, and if you should decide to arbitrate the matter, we do not think he would have any trouble in picking out some one here that would look after your interests in the best possible manner.

Awaiting your further favors, we are,

Yours truly,

JOHN H. LESLIE & Co."

" P. S. You seem to overlook the fact that we have three times as much money tied up in these raisins as you have, and that while you are losing the interest on $1,083, we are losing it on $6,250, and we could use this money to a very good advantage, at this time of the year, on other goods."

" CHICAGO, January 22, 1892.

William Brown & Co., 116 California Street, San Francisco, Cal.

GENTLEMEN: Having previously advised you that the raisins which you have shipped to us are not of the quality or grade called for by the contract of October last, and having requested your direction as to the disposition to be made of the raisins, and not having received any such directions, we hereby further notify you that we have received and shall receive such raisins with a view of protecting your interests as far as possible, and we shall dispose of them to the best possible advantage for your account, and hold you

responsible for all damages, costs and expenses occasioned by your failure to comply with your contract of sale.

Yours truly,

JOHN H. LESLIE & Co."

Probably the main difference between the theory upon which the case was tried, and the true one of holding the appellants responsible for a breach (if one there was) of warranty, is that the first theory puts upon the appellants the risk of the changes in market prices or values.

The appellees insist that the case being tried by the court without a jury, and no exceptions being saved on evidence, or to any propositions of law, the result can not be here questioned, citing Allison v. Leslie, 40 Ill. App. 441. In that case the finding of the court only was excepted to, and there being evidence, conflicting, but enough to justify the finding unless it was shown that the case was tried upon a wrong theory, it was rightly held that the theory not appearing by any exception, the judgment must be affirmed. That is consistent with the later cases. Kimball v. Doggett, 62 Ill. App. 528; West Chicago Park Commissioners v. Kincade, 64 Ill. App. 113.

But it is possible that the theory upon which a case is tried may be otherwise shown. Lowe v. Moss, 12 Ill. 477. That case was while the Supreme Court reviewed facts; before appellate courts had been created, or propositions of law invented. It there appeared by the bill of exceptions, that the court below decided in favor of the defendant for a bad reason. Here the judge in making his finding stated that it was "for the difference between the amount paid for the goods (by the appellees implied) and the net amount received" (with the same implication).

To this finding, and to the denial of the motion for a new trial, the appellants excepted, which makes this case exactly parallel to the one decided forty-five years ago.

This suit was by the appellants to recover the unpaid portion of the price. If there was a breach of warranty, the appellees were entitled to show it in defense without any special plea or notice; if they claimed more than was unpaid

of the price, a plea·or notice of set-off was necessary.
Whether the notice in this record was sufficient to recover
upon, *i. e.*, to claim a balance in favor of the appellees, is
not before us for decision.

The judgment is reversed and the cause remanded.