PHINEAS L. UNDERWOOD *et al.*

*v.*

FREDERICK W. WOLF.

*Filed at Ottawa January 21, 1890.*

1. CONTRACT—*delay in completion of work—damages recoverable.* A party who fails to complete certain work and machinery within the time undertaken and agreed upon, will be held liable in damages to the other party, unless he is prevented from performing in time by the acts or fault of the latter.

2. SAME—*sale of goods—putting up machinery—warranty—rights and remedies of the buyer.* Where one party agrees with another to furnish and put in place certain machinery, which the first party agrees and guarantees shall be of certain qualities and possess certain capabilities, such guaranty will be treated as a warranty, and its non-fulfillment will be regarded as a breach of warranty.

3. And where, in such case, the plant was to be completed by a day named, and was to be accepted, if the guaranties should be fulfilled, by a further day specified, it should be understood that the time intervening these two dates was to be made use of for the purpose of testing the machinery in order to ascertain whether it was such as it was guaranteed to be; and if the machinery should be found defective in any of the particulars named in the guaranties, the defects thus shown to exist must be regarded as patent defects, as contradistinguished from latent defects.

4. On a sale and delivery of personal property *in presenti,* with express warranty, if the property is found to be defective, the vendee may receive and use the property, and sue for damages on a breach of the warranty, or when sued for the price he may recoup such damages under the general issue, or set them up in a special plea of set-off.

5. If a party who contracts for the purchase and delivery of certain machinery, which the vendor warrants in certain respects, is allowed, by the agreement, time to test the machinery, and he retains the same after the time allowed for such test, his retention will show an election to accept the machinery; but such act of acceptance will not constitute an abandonment of his remedy by cross-action, or by a counter-claim in the vendor's action for the price.

6. The retention of property by the buyer for a longer time than is reasonable for a trial to test its warranty, or for a longer time than that fixed by the contract for trial, does not waive his right to damages for a breach of warranty. This is especially so where the property is

machinery attached to buildings by the vendee, the removal of which might cause an injury to the building, or be attended with difficulty.

7. In the case of an executory contract, the law gives the buyer a reasonable time for making an examination of the chattels sold; and a failure to make the examination within a reasonable time may preclude him from offering the property back, rescinding the contract, and avoiding payment on that ground, but it will not deprive him of the right to rely upon the breach of the warranty for damages.

8. If the purchaser of goods desires to rescind the contract and return the goods, he must offer them back as soon as he discovers the breach, or after he has had a reasonable time for examination. Such right to rescind and return is waived by retaining and continuing to use the goods longer than is necessary for a trial of them.

9. Where goods are sold under an executory contract, there may be an acceptance of them in full discharge of the contract, or there may be acceptance of them in such a sense that the buyer retains and uses them, and becomes vested with the title and ownership, but still reserves the right to claim damages for their defects.

10. INSTRUCTION—*construed—as whether an improper restriction of the right of recovery.* In an action to recover the contract price for refrigerators and other machines which were warranted, the court, for the plaintiff, told the jury, that so far as the defendants relied upon a breach of warranty as a defense or by way of set-off, the burden of proof was upon them "as to such breach, and as to any damages, if any, arising therefrom; and unless they prove such breach and damages as alleged by them, by a preponderance of the evidence, then they will not be entitled to any benefit therefrom in this suit:" *Held*, that this language very clearly conveys the idea that if the defendants did prove the breach and damages by a preponderance of the evidence, they would be entitled to the benefit thereof in the action.

11. So another of the plaintiff's instructions told the jury that damages for breach of warranty of machinery did not include probable profits or prospective gains, thereby implying that such damages as did not include probable profits or prospective gains might be recovered.

12. SAME—*not necessary to embody all the facts.* The law does not require that every instruction must, without regard to the office or purpose intended to be subserved, have embodied in it every fact or element essential to sustain the party's action or defense. Nor is it necessary to negative mere matters of defense.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This was a suit brought by appellee, in the Superior Court of Cook county, to recover from appellants the contract price of certain refrigerating machines and attachments, furnished and set up in appellant's packing house under the following contract:

"This agreement, made and entered into at Chicago this 8th day of February, 1886, by and between Fred. W. Wolf, of the city of Chicago, county of Cook, State of Illinois, party of the first part, and Phineas L. Underwood, James Viles, Jr., and Thomas M. Jordan, being and composing the firm of Underwood & Co., of the city of Chicago, county of Cook, State of Illinois, party of the second part:

"*Witnesseth:* That said party of the first part has agreed to furnish and erect on the packing house premises of the party of the second part, of the best material and workmanship, and in complete working order and condition, two forty-ton (each) Linde refrigerating machines, on coupled frames, with two iron condensing tanks and coils, and two iron refrigerating or brine tanks, of two hundred and fifty barrels each, and coils and necessary connections; one automatic cut-off Corliss engine, of 20x42 cylinder size, which shall be capable to run the packing house machinery in addition to the compressors; all the iron piping necessary to carry and convey the brine required for the proper cooling of the rooms hereinafter mentioned, to be cooled, together with feed and discharge pipes, hangers, manifolds, cocks, bends, etc., and one steam pump, of approved make, and of sufficient size to circulate all the brine to do the cooling mentioned to be done.

"That said party of the first part furthermore agrees and guarantees that the machine shall be of sufficient size to produce and maintain a temperature of 38 Fahrenheit in the following rooms, with the usual work of taking care of meats in cellars going on: Two storage rooms, each 64x118; one storage room for market, 22x42; two storage rooms, 22x42; one lard room, 29x27; one storage room under office, 29x96;

one room on wholesale floor, 25 ft. 2 in. x 9 ft. 9 in., and a temperature of 30 Fahrenheit in one room, 27x57; and the machines shall also cool, daily, to 32 Fahrenheit, eight hundred hogs, of average weight of two hundred pounds each, in two chilling rooms, each 32x103, in the following manner: To cool each room to 34 Fahrenheit in fourteen hours from time hanging in freshly killed hogs, and in ten hours more to cool the hogs in said room to 32 Fahrenheit temperature, inside of ham and next to bone, and to hold hogs at this temperature for twenty-four hours longer. It is understood that each hog or chilling room (32x103) is hung with hogs every alternate day, making a total of sixteen hundred hogs in both rooms, hanging at one time.

"And the party of the first part furthermore agrees and guarantees that the power required to drive the machines while doing the above work shall not exceed twenty effective horse power for each compressor, and the consumption of fuel necessary to produce steam to do the work of the engines shall not exceed three and one-half (3½) pounds of coal per horse power per hour, with seventy to eighty pounds boiler pressure and eight pounds of water evaporated per pound of coal burnt. It is understood that water used on condensing coils shall be from the Chicago river. And the loss of ammonia while doing the above work shall not exceed two hundred pounds per season's work for each compressor, the whole plant to be in complete working order and condition within ninety days from signing this agreement; and party of the first part to furnish all material and labor except as hereinafter provided. And said party of the second part agree to furnish a suitable room in which to erect said machinery; also all necessary foundations, masonry and carpenter work, according to the plans furnished by said party of the first part, free of charge. Said party of the second part furthermore agree to furnish all steam and all feed and discharge water connections, and to properly insulate all the rooms according to plans furnished

by party of first part. Specifications hereby attached to this instrument.

"In consideration of the foregoing agreement, said party of the second part furthermore agree to well and truly pay, or cause to be paid, to said party of first part, the full sum of eighteen thousand dollars, ($18,000) lawful money of the United States, in the following manner: Five thousand dollars ($5000) one week from time machines are in complete running order and condition; two thousand dollars ($2000) on July 1, 1886; two thousand dollars ($2000) on November 1, 1886; two thousand dollars ($2000) on March 1, 1887; two thousand dollars ($2000) on July 1, 1887; two thousand dollars ($2000) September 1, 1887, and the balance of three thousand ($3000) January 1, 1888.

"And it is further agreed between the parties to this contract, that if the machines have fulfilled the guarantees made for them in this agreement, by 1st of September, 1886, then said party of second part shall accept the same; and all payments to be made after the payment to be made on July 1, 1886, shall be promissory notes, dated on the day of acceptance of the plant, with interest after maturity.

"And said party of first part further agrees and guarantees to make all necessary repairs on said machinery for the term of three years, except such repairs as may be caused by the negligence or mismanagement of the employes of the party of the second part.

"In witness whereof, the parties of this agreement have hereunto set their hands and seals this day and year first above written.                        FRED. W. WOLF, *per* Metzger.

[Seal.]                        UNDERWOOD & Co."

Defendants filed the general issue, and pleas of set-off, denying the allegations of the declaration and claiming damages for non-fulfillment of the guaranties contained in the contract. The verdict of the jury was in favor of the plaintiff and for

the sum of $14,041.50. Motion for new trial was overruled and judgment entered upon the verdict. The judgment of the trial court has been affirmed by the Appellate Court.

Messrs. DEXTER, HERRICK & ALLEN, for the appellants:

In a suit for the price, the buyer may prove a breach of warranty in reduction of the damages, although the goods were sold at a fixed price, and have not been returned, or have been resold by the vendee. Chitty on Contracts, 901.

The buyer will lose his right of returning the goods delivered to him under a warranty of quality, if he has shown, by his conduct, an acceptance of them, or if he has retained them a longer time than was reasonable for a trial, or has consumed more than was necessary for testing them, or has exercised acts of ownership, as by offering to resell them,—all of which acts show an agreement to accept the goods, but do not constitute an abandonment of his remedy by cross-action, or his right to insist upon the defects in reduction of the price. *Crabtree* v. *Kile,* 21 Ill. 184; *Mears* v. *Nichols,* 41 id. 207; *Estep* v. *Fenton,* 66 id. 467; *McClure* v. *Williams,* 65 id. 394; *Peck* v. *Brewer,* 48 id. 54; *Strawn* v. *Cogswell,* 28 id. 462; *Babcock* v. *Trice,* 18 id. 420.

In case of executory contracts for the sale of personal property with a warranty as to quality, the law gives an opportunity for a test. Where the vendee receives the property without any express provision for trial or test, the law allows him a reasonable time in which to examine and test it when received, and if it is then found not to fulfill the warranty, an election either to return the property, or retain it and rely on his covenants of warranty. *Doane* v. *Dunham,* 65 Ill. 512; Chitty on Contracts, 652; Benjamin on Sales, sec. 1356.

That the fact that the contract of sale gives to the vendee the right to test or try the article for a definite time, even with an express provision that he shall have the right, at the expiration of that time, to return the article if it does not conform to

the warranty, does not deprive the vendee of his election to retain the property and sue on the covenants of warranty, was expressly held in the following cases, cited at length *infra:* *Douglas Axe Manf. Co.* v. *Gardner,* 10 Cush. 88; *Shupe* v. *Callender,* 15 At. Rep. 404; *McCormick* v. *Danville,* 36 Iowa, 645; *Aultman* v. *Flinn,* 34 id. 272; *Mandel* v. *Butler,* 21 Minn. 397; *Sugworth* v. *Leffel,* 76 Pa. St. 477; *Mears* v. *Nichols,* 41 Ill. 207.

Messrs. C. H. & C. B. WOOD, also for the appellants.

Messrs. HAMLINE & SCOTT, for the appellee:

Under the contract in evidence, the title to machinery did not vest in the appellants until the expiration of the time limited by the contract for test and acceptance. Having elected to retain the machines as their own after the expiration of that period, and in the absence of fraud or latent defects, they can not recover compensation for defects which existed in the machines. *Cast Steel Co.* v. *Morden Frog Works,* 23 App. Ct. 591; *Prairie Farmer Co.* v. *Taylor,* 69 Ill. 440; *Manton* v. *Gammon,* 7 Bradw. 207; *Manufacturing Co.* v. *Allen,* 53 N. Y. 515; *Delamater* v. *Chappell,* 48 Md. 246; *Norton* v. *Hummel,* 22 Bradw. 194; *Nye* v. *Alcohol Works,* 51 Iowa, 129; Benjamin on Sales, (4th Am. ed.) sec. 911; *Fairfield* v. *Manufacturing Co.* 31 Wis. 346; Sanders on Warranties, 26; *Delehay* v. *DeGraw,* 3 Keyes, 467.

The fact that the property might have been difficult of removal does not excuse return or offer to return. *Neaffle* v. *Hart,* 4 N. Y. 4.

Delay having been caused by appellants, appellee can not be charged with damages arising therefrom. *Taylor* v. *Renn,* 79 Ill. 181; *Kipp* v. *Massin,* 15 Bradw. 300; *Vermont M. E. Church* v. *Brose,* 104 Ill. 206; *Austin* v. *Steamboat Co.* 43 N. Y. 75; *Matthews* v. *Coe,* 49 id. 57.

Measure of damages for failure to complete in time is not probable profits. *Frazer* v. *Smith,* 60 Ill. 145; *Benton* v. *Fay,*

64 id. 417; *Railroad Co.* v. *Hale,* 83 id. 360; *Railroad Co.* v. *Cobb,* 64 id. 128; *M. W. P. Co.* v. *Waters,* 10 Bradw. 159.

The contract having been under seal, appellants can not be aided in their endeavor to recoup by the alleged variation of its terms by parol, by agreement with appellee's book-keeper. *Life Ass. Society* v. *Smith,* 25 Ill. App. 471.

Acceptance, after test and examination, will bar a party electing to accept the article, from all claim on account of defects existing in the article, and this, whether the agreements as to quality or capacity be express or implied.    *McParlin* v. *Boynton,* 8 Hun, 452; 71 N. Y. 604; *Manufacturing Co.* v. *Allen,* 53 id. 515; *Brown* v. *Foster,* 108 id. 387; *Delamater* v. *Chappell,* 48 Md. 246; *Locke* v. *Williamson,* 40 Wis. 377; *Nye* v. *Alcohol Works,* 51 Iowa, 129; *Monitor Milk Pan Co.* v. *Remington,* 41 Hun, 218; *Manufacturing Co.* v. *Manufacturing Co.* 38 Wis. 346; *Quinn* v. *Stout,* 31 Mo. 160; *Cast Steel Co.* v. *Morden Frog Works,* 23 App. Ct. 591; *Maxwell* v. *Lee,* 34 Minn. 511; *Olsen* v. *Mayer,* 56 Wis. 554; *Cassidy* v. *LeFevre,* 57 Barb. 313; *Williams* v. *Donaldson,* 8 Iowa, 108; *Brown* v. *Burhans,* 4 Hun, 227; *Gurney* v. *Railway Co.* 58 N. Y. 358; *Canning Co.* v. *Metzgar,* 43 Hun, 71; *Delafield* v. *DeGraw,* 3 Keyes, 467; *Neaffle* v. *Hart,* 4 Lans. 4; *Brown* v. *Freeman,* 79 Ala. 406; Addison on Contracts, 984; Benjamin on Sales, sec. 699; Sanders on Warranties, 26.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The contract bears date February 8, 1886.   By its terms the appellee was to furnish and erect the refrigerating machinery with engine, pump, pipes, etc., in the packing house of the appellants, and have the same in complete working order by the 8th day of May, 1886.   The evidence tends to show that the whole plant was not ready for use until the first day of July, 1886.

The evidence further tends to show that the appellants were carrying on their packing business while the appellee was put-

ting in the machinery. The appellee claims that the conduct of the business under such circumstances necessarily interfered with his work and delayed its progress. He also claims that delay was caused by the failure of the appellants to prepare in proper time the room, in which the machinery was to be erected.

. Whether the delay in the completion of the plant was due to the fault of the appellee or to that of the appellants was a question of fact to be determined by the jury under proper instructions from the court. We see no objection to the tenth instruction given for the defendants below, as modified by the court. It told the jury that "under the contract in evidence the plaintiff was bound to complete the whole plant in complete working order and condition within ninety days from the 8th day of February, A. D. 1886, *unless prevented by the acts or fault of the defendants;* and if the evidence shows that he did not do it, then he is liable in this action to the defendants for any damages the evidence may show they have sustained by reason of such delay." This instruction was given as asked by the defendants except that the words in italics were added by the court. It was proper to add the words in question because the contract required the defendants to furnish a room, foundations, masonry, carpenter work, and all steam and feed and discharge water connections, and to properly insulate the rooms according to plans, etc., and, if delay resulted from their failure to meet these requirements, the plaintiff certainly could not be held responsible. The jury found in his favor upon this question, and the judgment of the Appellate Court forbids us to disturb the finding.

But the main controversy between the parties arises upon the following provision in the contract: "And it is further agreed  *  *  *  that if the machines have fulfilled the guaranties made for them in this agreement by 1st of September, 1886, then said party of the second part (appellants) shall accept the same; and all payments to be made after the pay-

ment to be made on July 1, 1886, shall be promissory notes, dated on the day of acceptance of the plant with interest after maturity." The defendants refused to give and have never given the notes thus provided for.

What are the guaranties which were to be fulfilled? The plaintiff, Wolf, agreed and guaranteed, that the machine would maintain certain degrees of cooling temperature in certain rooms in the packing-house, and would cool the rooms within a certain specified time; that it would cool a certain number of hogs of a specified weight within a specified time; that the power required to drive the machinery should not exceed a certain limit; that the fuel required to produce the steam to do the work of the engines should not exceed a certain amount; that the loss of ammonia in doing the work should not exceed a certain number of pounds; that the refrigerating machines should be of the best material and workmanship; that the engine should be capable of running the packing house machinery in addition to the compressors; that the iron piping to be furnished should be such as would be necessary to carry and convey the brine required for the proper cooling of the rooms.

In considering the nature of these guaranties, it is unnecessary to discuss any nice distinctions between warranties on the one side, and conditions precedent or descriptions of the property on the other. It is sufficient that the guaranties are treated as warranties, and their non-fulfillment, if they were not fulfilled, will be regarded as a breach of warranty.

Inasmuch as the plant was to be completed by May 8, 1886, and was to be accepted if the guaranties were fulfilled by September 1, 1886, it is manifest that the period between these two dates was to be made use of for the purpose of testing the machines, in order to ascertain whether or not they were such as they were guaranteed to be. It is also sufficiently manifest that, if the machines failed in any of the particulars named in the guaranties, the defects which would thus be shown to

exist must be regarded as patent defects as contradistinguished from latent defects.

Where there is a sale and delivery of personal property *in presenti* with express warranty, and the property turns out to be defective, the vendee may receive and use the property and sue for damages on a breach of the warranty, or, when sued for the purchase price, he may recoup such damages under the general issue, or set them up in a special plea of set off. This is a well settled rule. In the present case the contract is executory; the title to the property did not vest in the purchaser until the period for making the test had passed. It has been held in some States that, where the contract is thus executory and a time is fixed for making a test, the acceptance and use of the property, after such time has passed, amount to a waiver of the right to claim damages for a breach of the warranty. But such is not the law in this State. In the present case, the evidence tends to show that the defendants took possession about July 1, 1886, of the machines, placed in their packing house by the plaintiff, and had been using the same up to the time of the trial of the cause in the court below. The chief complaint of the appellants is that, under the instructions given by the trial court, the jury were led to regard the acceptance and use of the machinery by the defendants as an abandonment of all right to damages for breach of the warranties. We are unable to regard this complaint as well founded.

We agree with the counsel for appellants, in the main, in their view of the law. We think that, even where the contract is executory, the claim for damages on account of a breach of the warranty will survive the acceptance of the property. Chitty on Contracts (11th ed.) at page 652 says: "Where, therefore, the vendor of a warranted article, whether it be a specific chattel or not, sues for the price or value, it is competent to the purchaser, in all cases, to prove the breach of the warranty in reduction of damages, and the sum to be recovered for the price of the article will be reduced by so

much as the article was diminished in value by non-compliance with the warranty." The previous discussion of the authorities by the author, before arriving at the conclusion thus announced, shows his meaning to be, that the breach of the warranty may be proven in reduction of damages, not only in the case of the sale of a specific chattel, but also in the case of an executory contract, as, for example, "where an article is ordered from a manufacturer who contracts that it shall be of a certain quality, or fit for a certain purpose." (*Idem*, pages 647 to 652).

In Benjamin on Sales, Vol. 2, sec. 1356 (4th Am. ed.), it is said : "The buyer will also lose his right of returning goods delivered to him under a warranty of quality, if he has shown by his conduct an acceptance of them, or if he has retained them a longer time than was reasonable for a trial, or has consumed more than was necessary for testing them, or has exercised acts of ownership as by offering to resell them ; all of which acts show an agreement to accept the goods, but do not constitute an abandonment of his remedy by cross-action or by counter-claim in the vendor's action for the price." If the retention of the property by the buyer for a longer time than is reasonable for a trial does not waive his right to damages in an action by the vendor for the purchase price, then there is no reason why his retention of the property for a longer time than that fixed in the contract for a trial should amount to such waiver.

The rule, as announced by these text writers has been held to be the law in this State.

In *Babcock* v. *Trice*, 18 Ill. 420, there was an executory contract for the sale and delivery of corn with an implied warranty that it should be of a fair and merchantable quality ; it was there said : "It is true that the acceptance of corn under an executory contract, with opportunity of inspection at the time of delivery, *without complaint*, may raise a presumption that it was of the quality contemplated by the parties, but it

will not preclude the party from showing and setting up the actual defect in quality and condition. * * * He could, * * * under the general issue prove the facts out of which the warranty arose, the breach and his damages by way of recoupment," etc. (*Crabtree* v. *Kile*, 21 Ill. 184).

In *Strawn* v. *Cogswell*, 28 Ill. 457, which was a petition for a mechanic's lien founded upon a contract to furnish iron castings for a grist mill, and where the defense was that the work was not done in a workmanlike manner and the materials were not of the quality required by the contract, we said : "Improvements of this description being permanent and fixed, and requiring skill to test their sufficiency, their being received and put to use is not such an acceptance as estops the party from claiming damages for their being defective."

In the case at bar, the refrigerating machines were so built into the packing house and so much a part thereof, that their removal could only have been accomplished with difficulty, and perhaps with injury to the house itself. The mere use of them by the defendants after September 1, 1886, might not of itself amount to such an acceptance as would preclude them from claiming damages for defects. (*Mears* v. *Nichols*, 41 Ill. 207; *Peck* v. *Brewer*, 48 Ill. 54).

In *Doane* v. *Dunham*, 65 Ill. 512, and same case, 79 id. 131, the distinction between executory and executed contracts was recognized, and it was held that, in the former, the law gives the buyer a reasonable time for making an examination of the chattels sold, that it is for the jury to determine under all the circumstances what is such reasonable time, that a failure to make the examination within a reasonable time may preclude the buyer from offering the property back, rescinding the contract and avoiding payment on that ground, but will not deprive him of the right to rely upon the breach of the warranty for damages. The only difference between that case and the one at bar is, that there the *law* gives time for examination or test, while here the *contract* fixes the time. The

same rule, however, will apply to both cases. (*Estep* v. *Fenton*, 66 Ill. 467).

In *Owens* v. *Sturges*, 67 Ill. 366, it was held that where the contract is unexecuted, the buyer may retain the property and show the warranty and breach to reduce the recovery, even though he neglected to return the property upon discovery of the breach.

In *Prairie Farmer Co.* v. *Taylor*, 69 Ill. 440, the contract was to set up a printing press in complete running order in the defendant's press room within seventy days from. the acceptance of the plaintiff's proposition, with warranty that the press should give complete satisfaction, and granting to the defendant thirty·days' time from the setting up of the press to decide whether the warranty was good ; the defendant gave no notice of its intention after the thirty days had passed, but kept the press ; it was held, that the continued use of the press indicated the vesting of the title in the buyer, and that the defendant could recoup his damages from the contract price if there had been a breach of the warranty.

We are, therefore, of the opinion that the defendants had a right, in the case. at bar, to offset, against plaintiff's claim for the contract price of the machines, such damages as they were able to show that they had sustained from a failure to fulfill the guaranties, if there was such failure.

The subject presents itself under two aspects : first, were the machines such as they were warranted to be in the contract? second, if they were not such as they were warranted to be, was there such an acceptance of them as would preclude the defendants from insisting upon damages for the breach?

The case seems to have been tried mainly upon the theory suggested by the first question. The plaintiff introduced proof to show that the machines did fulfill the guaranties, while the defendants produced evidence to show that they did not fulfill the guaranties. In other words, the question most promi-

nently presented to the minds of the jury was, not whether there had been a waiver of existing defects, but whether or not any defects actually existed. Upon the latter subject they were most fully and elaborately instructed by the court. The court gave nine or ten instructions asked by the defendants, authorizing the jury to give them damages for the breach of the warranties if the jury should find from the evidence that the machines did not fulfill the guaranties. These instructions all adopt and express the theory of the law contended for by the counsel for appellants. They announce over and over again, that the defendants were entitled to damages if the machines were not what they were warranted to be as to cooling capacity for rooms and hogs, as to amount of power and fuel and piping, etc., and as to every other particular specified in the contract. The jury by their verdict and the Appellate Court by their judgment of affirmance have found the fact to be that the defendants had not suffered the damages claimed by them. Hence, such fact is settled beyond our power to change it.

But counsel say, that the instructions given for the defendants, although announcing a correct rule of law, were contradicted by the instructions given for the plaintiff, and that the jury were left at liberty to follow either of two sets of contradictory instructions, unenlightened as to what the law really was. We do not think that the instructions taken as a whole can be regarded as laying down contradictory principles. Certainly no instruction given for the plaintiff states that the defendants were not entitled to damages for breach of the warranties. On the contrary, several of them expressly recognize the right of the defendants to claim damages.

The fourth instruction given for the plaintiff told the jury, that, so far as the defendants relied upon a breach of warranty as a defense, or by way of set-off, the burden of proof was upon them "as to such breach and as to any damages, if any, arising therefrom, and unless they prove such breach and

damages as alleged by them by a preponderance of the evidence, then they will not be entitled to any benefit therefrom in this suit." This language most clearly conveys the idea that if the defendants did prove the breach and damages by a preponderance of the evidence, they would be entitled to the benefit thereof.

The fifth of plaintiff's instructions told the jury that damages for breach of warranty of machinery did not include probable profits or prospective gains, thereby implying that such damages as did not include probable profits or prospective gains might be recovered.

The first instruction given for the plaintiff, in reciting the conditions upon which the plaintiff would be entitled to recover interest upon the notes, uses these words: "The court instructs the jury, that, if they believe from the evidence that the plaintiff has made out his case as by him alleged in his declaration," etc. The plaintiff in his declaration alleges that he has furnished machines, tanks, engine, piping, etc., of such description, quality and capacity as the contract calls for, and that he has kept the contract in all things on his part, and performed all the covenants therein within the time and in the manner therein provided. In other words, the first instruction requires the jury to find, as a condition of recovery, that the plaintiff has fulfilled all the guaranties above specified. This requirement negatives the idea that the defendants, by acceptance or other acts, had waived their right to claim damages for a non-fulfillment of the guaranties.

The obscurity, which seems to exist in one or two of the instructions given for the plaintiff, will disappear upon considering the true meaning of some of the terms therein used.

Where the contract for the sale of the goods is an executory one, and the time for examination, whether fixed by the contract or allowed by the law, has passed, the buyer may refuse to accept the goods and may return them, or he may accept them and sue for breach of warranty, or rely upon the dam-

ages for such breach in reduction of the contract price. (Benjamin on Sales,—4th Am. ed.—vol. 2, secs. 1346, 1347, 1348, etc. ; *Doane* v. *Dunham, supra; Owens* v. *Sturges, supra; Mears* v. *Nichols, supra*). If he desires to rescind the contract and return the goods, he must offer them back as soon as he discovers the breach, or after he has had a reasonable time for examination ; such right to rescind and return is waived by retaining and continuing to use the goods longer than is necessary for a trial of them.

There is some evidence tending to show that Viles, one of the defendants, requested the plaintiff to remove the machine. Such request if made would indicate an intention on the part of the defendants not to accept the machine, but to rescind the contract. Hence, no harm was done by giving the plaintiff's eighth instruction. That instruction merely told the jury that the right of the buyer to reject the article sold to him, or, in other words, his right to return it and rescind the contract, might be waived or lost by acts inconsistent with the ownership of the vendor or by the continued use of the article after knowledge of the defects. But the impression was in no way conveyed to the minds of the jury that, if defendants elected to accept the machine and not to return it, their right to offset damages for breach of warranty against the contract price would be waived by such acts and such continued use as are specified in the instruction. Waiver of the right to return the machine is one thing ; waiver of the right to claim damages is another and entirely different thing. The third instruction given for the defendants expressly told the jury that "the defendants were not bound to return the said machines and apparatus, if found not to be according to the warranty, but might keep the same, and, when sued for the price, set up such warranty and the breach thereof as a defense, and, if proven, be allowed the amount of damages they have sustained by reason of the breach of the warranty."

It is also to be observed that the word, "acceptance," as used in reference to the subject matter of this controversy, has two significations. Where goods are sold under an executory contract, there may be an acceptance of them in full discharge of the contract, or there may be an acceptance of them in such sense that the buyer retains and uses them and becomes vested with the title and ownership of them, but reserves the right to claim damages for their defects. This distinction is recognized in *Estep* v. *Fenton, supra,* and in *Mears* v. *Nichols, supra.* It is also recognized in the fourth instruction given for the defendants in this case, which told the jury, that "the defendants are not prevented from setting off the damages they may have sustained by reason of the performance of the contract in a manner different from the agreement merely because they may have done acts amounting to an acceptance of the machine. They could only be prevented from setting off such damages so sustained in case they had accepted the machine in full discharge of the contract." So, also, the seventh instruction given for the plaintiff contains these words: "If the jury shall believe from the evidence that, prior to the bringing of this suit, defendants did accept said machine *in full discharge of the contract,* then the jury are instructed that defendants are not entitled to set off or recover in this action any damages resulting to them, if any, by reason of plaintiff's failing to meet the guaranties made by him in said contract." Under these and other instructions that were given, the jury could not have been led to believe, that the right of the defendants to claim damages for breach of the warranties was cut off or waived by any other kind of acceptance than an acceptance in full discharge of the contract.

As to the second and sixth instructions and the first part of the seventh instruction given for the plaintiff, it may be said of them as was said in *Village of Sheridan* v. *Hibbard,* 119 Ill. 307: "It is an error to suppose that every instruction asked

by a plaintiff must, without regard to the office or purpose it is intended to subserve, have embodied in it every fact or element essential to sustain the plaintiff's action, nor is it necessary to negative matters of mere defense."

The second instruction simply stated the amount which plaintiff would be entitled to by the terms of the contract, if he was.entitled to recover at all; it by no means excluded or negatived the right of the defendants to offset against such amount the damages which they might succeed in proving.

The sixth instruction and the first sentence of the seventh intended to call the attention of the jury to the time allowed to the defendants for the purpose of testing the machine. Therein the jury were told that, if the time for making the test, which by the terms of the contract expired on September 1, 1886, was extended beyond that date by arrangement between the parties, then whatever the defendants were required to do by September 1, 1886, either in the matter of rejecting the machine, or of accepting it—whether such acceptance should be in full discharge of the contract, or with a reservation of the right to offset damages for breach of the warranties —they might do at the expiration of the period as thus extended. There was nothing in the language used that could by any possibility have been construed as a denial of the right to claim damages for a failure to fulfill the guaranties.

We perceive no such error in the record as will justify us in reversing the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*