## The Fred W. Wolf Company, Appellee, v. Monarch Refrigerating Company, Appellant.

## Gen. No. 15,462.

1.  PLEADING—*when recovery may be had under common counts.* If nothing remains to be done but the payment of money pursuant to a contract for the delivery of merchandise a recovery may be had under the common counts.

2.  CONTRACTS—*what acceptance of merchandise. Held,* where merchandise was delivered under a written contract which contained certain provisions with respect to acceptance or rejection, that use and operation of a part of such merchandise implied an acceptance of that part, and that no right to accept a part being preserved by the contract, the acceptance was to be deemed as an acceptance of the whole. *Held,* further, that if a part of the merchandise so accepted was defective, a right to recoup damages for the defective part existed.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed April 13, 1911.

MOSES, ROSENTHAL & KENNEDY, for appellant; JOSEPH W. MOSES and WALTER BACHRACH, of counsel.

SCOTT, BANCROFT & STEPHENS, for appellee.

22    APPELLATE COURTS OF ILLINOIS.

Fred W. Wolf Co. v. Monarch Refrigerating Co., 161 Ill. App. 21.

MR. JUSTICE SMITH delivered the opinion of the court.

This was an action brought by The Fred W. Wolf Company, hereinafter called plaintiff, against the Monarch Refrigerating Company, hereinafter called defendant, on the common counts and a special count for the recovery of a balance claimed to be due the plaintiff from the defendant on a contract. The special count set out the original and supplemental contracts between the parties, wherein the plaintiff agreed to furnish and erect in defendant's building, in complete working order and condition, a refrigerating plant of 225 tons daily capacity. The contract provided for a ten days test and also, ''At the end of the above mentioned ten days you shall accept or reject the plant; it being understood, however, that if it shall meet the requirements of this proposition, it shall be accepted. If rejected, you shall notify us in writing thereof, and hereby permit us to enter the premises and remove same without charge to you, and upon refunding to you whatever money has been paid us. An acceptance after the above mentioned period shall be in full discharge of agreements hereinbefore contained.''

It was further averred that the said refrigerating plant was furnished and erected in the premises described and was delivered to defendant, and defendant then and there accepted same, etc. The defendant pleaded the general issue. At the close of all the evidence the court directed a verdict for the plaintiff for the sum of $13,844.57, and judgment was entered thereon.

If the defendant accepted the plant the plaintiff can recover under the common counts and the said special count. Spencer v. Dougherty, 23 Ill. App. 399, and cases there cited.

The defendant ably and vigorously insists there was no acceptance of the plant. The plaintiff did not deliver the plant within the time mentioned in the con-

Fred W. Wolf Co. v. Monarch Refrigerating Co., 161 Ill. App. 21.

tract, but the evidence clearly showed that the defendant waived the terms of the contract as to the time of the delivery. The test provided by the contract was begun April 26, 1904, and continued until May 26, 1904, when the representatives of the plaintiff conducting the test were withdrawn. The testimony showed there was trouble with the engine, but no complaint as to other parts of the plant. On May 18th Mr. Knuth, representing the plaintiff and in charge of the tests, called on Mr. Frederick Espert, the secretary and treasurer of the defendant, and presented to Mr. Espert and asked him to sign a writing directed to plaintiff and in part as follows: "Your Engineer has been in charge of the operation of the plant for the required period and machinery and apparatus is working satisfactorily and you may treat this as a formal acceptance under such contract." Mr. Espert returned the paper and testified that he told Knuth, "I could not sign that; that we did not propose to accept the plant, and that I would so write his firm, put it in writing;" that he never understood that they were making a test run; there were so many repairs to be made; the engine was no good, the engine heated, the fly wheel was not true, the governor would not work, etc., detailing many objections. Mr. Knuth, in answer, said from his experience the bearings would wear smooth and the heat would cease, etc., and "to go ahead and run it, give it a chance to show itself." "In reply to that I said, 'Well, if that is your idea and if that is your request, we can let the boys run it further, try it out.'" The next day, May 19th, the defendant wrote the plaintiff the following letter, omitting address and signature: "Gentlemen: Referring to your letter of the acceptance left here by your representative yesterday, which relates to the contract dated Nov. 28, 1902, we have this to say; we decline to accept the steam engine, the same is not in accordance with contract and is unsatisfactory to us. Very truly yours."

24    APPELLATE COURTS OF ILLINOIS.

Fred W. Wolf Co. v. Monarch Refrigerating Co., 161 Ill. App. 21.

On May 25th Mr. Knuth again called and, Mr. Espert testified, asked if the engine ran any better, and gave him a letter, which letter Mr. Espert laid on the table without opening, and told him the engine still ran hot and repeated the objections made to him on the prior visit, and said, "We could not accept the engine. * * * He said it would be unfair to shut down the engine and he wanted to know what is to be done with it. 'Why,' I says, 'take it out.' 'Well,' he said, 'that would be impossible,' and I said sooner or later it would have to be taken out or it would blow out. * * * He said, 'You go on and run it for a while; I am sure it will come out right.' "

The letter left by Mr. Knuth from plaintiff to the defendant was dated May 25th, and in part was as follows:

"We have furnished all the apparatus and performed all work required of us under the provisions of our contract of November 28th, 1902, and of the supplementary contract modifying such original contract; and our man has been in charge of the operation of the apparatus for a considerable longer period than is provided in such contract. The apparatus is working perfectly and is performing the full duty guaranteed. No difficulties whatever have been experienced with the operation of this apparatus with the exception of certain adjustments of the governor, which adjustments were made ten days ago. Since that time absolutely no difficulty has been experienced except that which is directly and entirely attributable to lack of sufficient steam pressure. * * * We know that the engine which we have furnished you complied with the contract requirements in every particular. Knowing, as we do, that we have done each and every thing required to be done by us; that we have given you a plant complying in every respect with our contract, and that the time provided in such contract for you to accept or reject the apparatus has passed, we shall assume no further responsibility for its operation."

Mr. Espert opened this letter the next day and an-

swered it by writing plaintiff under date of May 26th as follows: "Gentlemen: Yours of the 20th is to hand. We have fully replied to this matter in our letter of the 19th to you. Very truly yours." We find no letter in the record of the 20th referred to, and from the testimony it is clear that the date "20th" was a mistake and should have been the "25th," for it was in answer to the said letter of the 25th left by Mr. Knuth with Mr. Espert. The attorneys for the plaintiff then wrote the defendant stating the position of plaintiff, asking for a prompt settlement, otherwise action would be brought. To this letter the defendant answered under date of May 28th: "Gentlemen: Inasmuch as you say the Fred W. Wolf Co. have placed in your hands all contracts and letters which have passed between us we would respectfully refer you to our letter written them dated May 19, 1904. This letter explains our position in this matter. We decline to accept the engine. You can pursue such course as you see fit. Very truly yours."

The testimony further shows that the defendant used and operated the plant, including the engine, continuously, or practically so, to the day of the bringing of this suit, July 14, 1904. The foregoing substantially states the material evidence on the question of acceptance, although there is testimony of other witnesses to the same effect and corroborating the testimony of Mr. Espert and also testimony conflicting therewith, especially as to the objections to the engine.

The only testimony tending to show an intention to reject the plant was the statement Mr. Espert said he made to Mr. Knuth May 18th: "We did not propose to accept the plant and that I would so write his firm, put it in writing." He never did so write, but contented himself with writing rejecting the engine. Moreover, in further conversations and all subsequent correspondence his statement was unequivocal that the engine was rejected. Not a word further was spoken

or written about the remainder of the plant being unsatisfactory. The evidence shows clearly and emphatically a refusal to accept a part of the plant—the engine. Should it be held that the rejection of the engine was a rejection of the entire plant?

It was a contract for the furnishing and erection of a refrigerating plant of 225 tons refrigerating capacity daily. The specifications described more or less in detail an engine, a compressor, condenser, air coolers, gauges, pipes, etc. The consideration was $20,500, payable one-half on delivery of machinery on premises and one-half on completion of test run. There was testimony that "each one of those pieces or parts of machinery is essential to the running of the whole plant installed by the Wolf Company at that time." We think that the contract was an entirety and was so regarded by the parties.

The defendant urges that the contract contemplated an express acceptance of the plant. The contract provided: "At the end of the above mentioned 10 days you shall accept or reject the plant; it being understood, however, that if it shall meet the requirements of this proposition, it shall be accepted. If rejected, you shall notify us in writing thereof." While the manner of rejection is specifically stated, there is no manner of acceptance prescribed. The contract was evidently drawn with the view that use and operation would constitute an acceptance. The rule of law that where the contract is entire a party cannot affirm in part and rescind in part is so well established that the citation of authorities seems unnecessary. It appears to us that in the application of this rule under the evidence and the terms of the contract, we are constrained to hold that a rejection of a part—the engine—was not a rejection of the entire plant, but the retention of the plant with a continuous use and operation of the same, without a written rejection thereof as

Fred W. Wolf Co. v. Monarch Refrigerating Co., 161 Ill. App. 21.

provided by the terms of the contract, was an acceptance of the entire plant.

The defendant claims that even though it be held there was an acceptance of the plant, it was entitled to recoup its damages by reason of the defective engine, under Underwood v. Wolf, 131 Ill. 425, and the authorities there cited. We think that is true, and are inclined to the view that the greater weight of the evidence showed a defective engine, or at least it was a question of fact to be submitted to the jury, unless it be held that the defendant discharged its claim for damages under the terms of the contract when it accepted the plant. The contract provided: "An acceptance after the above mentioned period shall be in full discharge of agreements hereinbefore contained." In Estep v. Fenton, 66 Ill. 467, the court said: "Unless the trustees accepted the property in full discharge of the contract, they could recoup damages sustained by reason of its performance in a manner different from the agreement, although they may have done acts amounting to an acceptance." If the defendant contemplating the work in question saw fit to waive by contract its damages, if any, upon its acceptance of the plant, we can see no reason for holding said waiver of no binding force. Suppose, when it became evident, as defendant said it was, that the engine did not work as warranted, the defendant had rejected in writing the entire plant, and demanded under the terms of its contract its money be refunded and the plant be removed; could the plaintiff have successfully complained of a great loss because the defendant stood upon its legal rights under the contract? So, if it be true that the defendant suffered damages by reason of the defective engine, which plaintiff denied, the defendant by its contract expressly discharged same upon its acceptance of the plant.

The defendant also argues that if it be assumed that by the clause in the contract use and operation of the

plant amounted to a discharge of plaintiff's agreements contained therein, yet such clause was waived by plaintiff's invitations to defendant to operate the plant and give it further trials. We do not think that argument sound under the circumstances of the case at bar. The invitations to continue the use of the engine were all prior to May 26th. On that date the representatives of plaintiff were withdrawn and immediately thereafter the plaintiff, by its attorneys, claimed the contract performed on its part, demanded full settlement and threatened legal action unless prompt payment was made. The defendant on May 28th, in answer, again declined to accept the engine, and stated that the plaintiff might proceed as it saw fit. The defendant thereupon continued the use and operation of the plant, including the engine, down to and on the day suit was begun. We can see no theory on which we can properly hold the use and operation of the plant subsequent to May 26th was on the invitation of plaintiff.

From the view we take of the case and the fact that the court directed a verdict, we do not consider the rulings of the court on certain evidence admitted and testimony excluded, to which exceptions were preserved, reversible error.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*