## M. Hakes and J. R. Hakes, trading as M. & J. R. Hakes, Appellees, v. B. Aaron & Sons, Appellant.

### Gen. No 18,406.

1. SALES, § 98*—*when buyer not entitled to rescind.* A buyer of frozen poultry in a cold storage warehouse with the understanding that the goods are to be withdrawn and paid for before a certain day is not entitled to rescind the sale for breach of warranty as to the condition of the goods, where he has withdrawn and paid for a portion and has made no attempt to rescind the contract within a reasonable time.

2. SALES, § 106*—*rule as to buyer's right to rescind.* In executory contracts when the article delivered is not the article ordered, or is not equal to the sample, or does not comply with some representation as to quality, the buyer may reject and return the article as soon as it is found not to comply with the contract of purchase, provided he exercises such right within a reasonable time and has done nothing in the meantime beyond what is necessary to make a fair test of the article delivered.

3. SALES, § 105*—*when buyer waives right to rescind.* Buyer waives right to rescind an executory contract of sale for breach of warranty where he neglects to make an examination of the goods within a reasonable time.

4. SALES, § 330*—*when refusal of instruction on right to rescind, not error.* Refusal of instruction to the effect that the buyer may rescind for misrepresentations as to quality or that goods were not equal to samples "upon discovery of such fact," *held* not error, since the instruction places no restriction on time to rescind.

5. SALES, § 330*—*when instruction as to rights of buyer for breach of warranty, not objectionable.* An instruction that buyer had no right to rescind for breach of warranty under certain circumstances and that he simply had the right to recoup, *held* not objectionable as indicating that buyer could not return the goods.

6. SALES, § 330*—*when instructions not erroneous in asserting contract was executed.* Instructions detailing circumstances under which title would pass, *held* not objectionable as asserting that the contract became executed so that buyer's only defense was his right to recoup for damages for breach of warranty in suit for contract price.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

7. MUNICIPAL COURT OF CHICAGO, § 17*—*when not error to re-fuse offered written instructions.* When Municipal Court elects to instruct the jury orally, it is not error for the court to refuse to give an offered written instruction even though it is correct and applicable to the evidence.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 9, 1913.

MCEWEN, WEISSENBACH, SHRIMSKI & MELOAN, for appellant.

WEST & ECKERT, for appellees.

MR. JUSTICE FITCH delivered the opinion of the court. Appellees, who are in the poultry business at Lau-rens, Iowa, being the owners of about ten thousand ducks, which were packed in boxes and stored in a cold storage warehouse in Chicago, sold them on April 5, 1910, to appellant, a corporation engaged in buying and selling poultry on South Water street. During the negotiations which preceded the sale, one of the appellees, J. R. Hakes, went with the president of the appellant company and his "buyer" to the cold storage warehouse, where forty or fifty of the boxes, chosen at random from the whole number of boxes, were brought out of the "freezer," the covers removed and the contents examined. All the witnesses agree that the ducks thus exhibited were in fine condition. Appel-lant claims that an examination of every duck or every box of ducks, at that time, would have been impracti-cable on account of the great number of ducks and because an examination of the ducks in their then frozen condition, if made, would have disclosed noth-ing, so far as the soundness, or unsoundness, of the ducks was concerned. Appellees deny this claim, assert that there is a simple and well known test to determine the soundness of frozen poultry and claim

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

that the fullest opportunity was then given to appellant to make that test or make such an inspection or examination as it desired, or thought was necessary or advisable to make. Appellant testified that at and before that time J. R. Hakes expressly stated that all the ducks were equal to the samples exhibited and were "fancy A No. 1" ducks. Hakes denied that he used the term "fancy A No. 1 ducks," but admitted that he said the ducks were of the best quality, were all alike and equal to those exhibited. On April 6, 1910, appellees wrote to appellant as follows: "We are handing you herewith memorandum showing lot numbers, number of packages, and expiring dates of poultry sold you yesterday, with the understanding that these goods are to be withdrawn and paid for prior to May 1st, and on any goods held in storage longer than the expiring dates, you to assume this additional storage. A copy of this letter has been filed with the Booth Cold Storage, who will invoice these goods to you at 22¼ cents per pound, as per terms of sale." Inclosed in this letter was a memorandum giving the lot numbers, the number of boxes in each lot number, and the weight of each lot, the whole aggregating 768 boxes of ducks, weighing 42,738 pounds. This letter and memorandum were delivered by Hakes in person to the president of the appellant company, who, without objection or comment, handed them to his manager. During the following three or four weeks appellant "withdrew" from storage and sold 439 boxes of ducks and remitted to appellees a part of the agreed price for the same. About April 20, 1910, one of the boxes sold by appellant was returned to it in bad condition. The attention of Hakes, who was then in Chicago, was called to the condition of the ducks in that box, but it seems to have been conceded by appellant at that time that the bad condition of that particular box of ducks was due to careless handling or keeping after the box was taken

out of the warehouse. On May 10th, appellant wrote to appellees, complaining that other boxes of ducks had been returned by appellant's customers. The letter said: "We have had complaint on about twelve or fourteen boxes, both in the city and out, which I have made good and expect you to do the same to me. Hereafter we will examine every box carefully before shipping it, and if not O. K. will return them to Booth's and charge same to you." On May 25, 1910, appellants again wrote to appellees to the same effect, saying: "It seems there was some of these ducks mixed in each lot, according to the way we find them, and would like to hear from you, as we wish to get this matter straightened up. We dare not ship any out without examining every box. Those we find that are not what they ought to be we are returning to the freezer." To this letter appellees replied that they had notified the storage company to go through the remainder of the boxes in storage and "take out such boxes that show bad condition." On June 18, 1910, appellant notified appellees by mail that, for the reason stated in their prior letter, they "must now refuse to accept any more, for the reason that they are not A No. 1, as purchased." (Though this letter was not admitted in evidence, its substance was admitted by appellant's counsel.) The evidence shows that of the 439 boxes that were taken from the storage warehouse by appellants and sold, seventy-eight boxes were returned, and 329 boxes were never removed from the warehouse by appellant. While it was contended that all of the ducks that were returned were in bad condition, and while appellees did not deny that some of them were bad when returned, there was evidence from which the jury might reasonably find that they were not in bad condition at the time they were withdrawn from the cold storage warehouse. Many of them were resold nearly a year later, when all that remained in the warehouse, including those thus

returned, were sold by the storage company to pay charges. There is evidence tending to prove that even then, all except about thirty boxes, were in good condition. There is also some evidence to the contrary. The price realized at that time for most of them was nearly, if not quite, the full market price for cold storage ducks in good condition. After all were thus disposed of, appellees brought suit and, upon a trial before a jury in the Municipal Court, recovered a judgment for the full contract price and storage charges, less the amount which had been paid for the ducks taken out and sold by appellant.

It is insisted by appellant's counsel that the instructions given by the trial court and the refusal of the court to give certain offered instructions, show that the court entertained erroneous views of the law applicable to the transaction in question and the rights of the respective parties. The court elected to give its instructions orally and therefore, under the rule announced in *Morton v. Pusey*, 237 Ill. 26, it was not error for the court to refuse to give any offered written instructions, even if they were correct and applicable to the facts in evidence. Aside from this rule, however, the offered instructions were not accurate and were misleading. They stated, in substance, that if the jury believed, from the evidence, that certain stated representations as to the quality of the ducks were made by the plaintiff, and such representations proved to be untrue, or if samples were submitted and the bulk was not equal to the samples, or if the ducks were unfit for consumption as food, then the defendant had the right, "upon discovery of such fact," to rescind its contract and "refuse to accept" any more of the ducks. By these instructions no time limit or other restriction was placed upon appellant's alleged right of rescission, except such as may be implied from the words "upon discovery of such fact." The rule is well settled that in executory contracts, when the article delivered

is not the article ordered, or is not equal to the sample, or does not comply with some representations as to quality, the buyer has the right to reject and return the article as soon as it is found not to comply with the contract of purchase, provided such right be exercised within a reasonable time, and provided the buyer has done nothing in the meantime beyond what is necessary to make a fair test of the article delivered. In such cases the law gives the purchaser a reasonable time for examination, but if he neglects or fails to make such an examination within a reasonable time, his right of rescission is thereby waived, and when sued for the purchase price thereafter, his only defense is to show, by way of recoupment, any damages he has sustained by the breach of the warranty expressed or implied in the contract. *Doane v. Dunham*, 65 Ill. 512; *Owens v. Sturges*, 67 Ill. 366; *Underwood v. Wolf*, 131 Ill. 425, 439; *Mayes v. Rogers, Schwartz & Co.*, 47 Ill. App. 372.

The abstract shows that the only objection made to any part of the oral charge was "to that portion that tells the jury that they had no right to rescind this sale, under certain circumstances detailed by the court, and that they simply have the right to recoup." The only place in the oral charge in which the jury were told that the appellant had no right to rescind the sale is in a sentence which reads as follows: "If you believe from the evidence that the plaintiffs supplied the defendant with samples of the ducks in question and that meant an implied warranty on the part of the plaintiff that the whole lot was substantially of the kind and quality as the sample, then the defendant would be entitled to refuse to receive any ducks that did not so correspond to the sample, or he could receive the ducks and recoup in this case by charging the plaintiff with the difference between the value of the ducks of the kind and quality as the sample and the value of the ducks as received; and the defendant would be entitled

to a reasonable time and a reasonable opportunity in which to inspect the ducks to ascertain whether they were of the kind and character as to correspond with the sample, or he would be required to inspect them within a reasonable time after having a reasonable opportunity to inspect them; and if he accepts them after an inspection, or if he has a reasonable opportunity and time to inspect the ducks and fails to do so and he goes on and exercises acts of ownership over them, the law would consider that as an acceptance and he could not thereafter rescind the sale and return the ducks to the plaintiffs." By another paragraph of the charge the court told the jury that if there was an express warranty as to quality and the ducks were not as warranted, "then if the defendant desired to reject the said ducks it must do so within a reasonable time, and if it failed to do so it became obligated to pay the contract price less the damages, if any, shown by the evidence to have resulted on account of the breach of the warranty." These paragraphs do not indicate any view by the court that appellant could not return the ducks under any circumstances, as seems to be claimed by appellant's counsel. By other paragraphs the term "warranty" was defined and explained to the jury and they were also told that appellant was under no obligation to inspect each and every box of ducks at the time of making the contract and that, if it did not inspect them, it had the right to rely upon any representation or warranty as to the condition and quality of the ducks, and, upon the discovery of the falsity of such representations, or breach of such warranty, to recoup in this suit the difference in value, if any, between the value of the ducks as warranted, or represented, and their actual value on April 5, 1910.

It is urged that the instructions in effect told the jury that by the letter of April 6, 1910, the title to the whole 768 boxes of ducks in the storage warehouse

Hakes et al. v. B. Aaron & Sons, 182 Ill. App. 100.

passed to the appellant, that thereby the contract became an executed contract, and that appellant's only defense when sued for the contract price was the right of recoupment.  We do not think the charge of the court, when read as one charge, as it must be, is fairly open to this criticism.  The paragraphs above mentioned are inconsistent with the theory thus advanced. There is no specific reference to the letter in the charge but the jury were told that ''when the parties agreed upon a price'' for ducks ''in a warehouse, packed, numbered and marked as to weight'' (as to which facts there was no controversy), ''and if you believe from the evidence nothing further remained to be done by the parties but the defendant to withdraw such ducks from time to time and pay for them,'' then upon notice of the sale to the warehouse, the sale was completed and the title passed.  This is far from being an assertion that the contract was, in fact, executed when the letter of April 6th was sent, as claimed by counsel.

In the brief and argument of appellant's counsel their contention as to the law applicable to the facts of this case is stated as follows: ''Regardless of whether the contract in question was executory or executed, and regardless of whether the title to the ducks in question passed to the defendant on the 6th of April, 1910, nevertheless the defendant had the right, when opportunity was presented, to inspect the ducks in question, and if they failed to comply with the express warranty that it claimed plaintiffs had made to it, or if they failed to comply with the warranty, either express or implied, arising out of the showing to the defendant of certain boxes of ducks as samples, to reject the ducks and rescind the contract.''  As to that portion of this contention relating to sales by sample, the charge of the court was in accord with this contention of appellant's counsel. As to the remainder of the contention, however, the rule in this State is not

as sweeping as is thus stated by counsel. In *Owens v. Sturges,* 67 Ill. 366, it is said: "Where a person purchases chattels on a warranty as to soundness or quality, and the contract is *executed,* on the failure of the warranty the purchaser may recoup the damages sustained by reason of the breach, from the purchase price of the chattels. Where the contract is *unexecuted,* or there is a stipulation that the property may be returned if not found to be satisfactory, or if the warranty be accompanied with fraud in the sale, in such cases the vendee may return the property on discovering the breach of warranty, but otherwise he has no such right. He then must retain the property, but may show the warranty and breach in mitigation of damages, and to reduce the recovery." To the same effect are *Farris v. Alfred,* 158 Ill. App. 158, and *J. I. Case Threshing Mach. Co. v. Puls,* 158 Ill. App. 1. There is no claim in this case that there was any stipulation in the contract that the property might be returned, if not found to be as represented, nor is there any claim that there was any fraud in the sale. Hence, the only theory upon which the defendant would be entitled to return the property upon the failure of the warranty is the theory that the contract was unexecuted. We think the trial court recognized that theory of the facts by stating in effect, that a purchaser with a warranty has the right to reject the article delivered for failure to meet the warranty, provided he does so within a reasonable time. But if the charge of the court be fairly susceptible of the meaning given it by counsel, we think there is no error of which appellant can complain, for the reason that there is no evidence fairly tending to prove that at the time of the attempted rescission of the contract, viz: June 18, 1910, the contract was unexecuted. By the express terms of the letter of April 6th, which unquestionably states a part of the contract, if not the whole of it, the sale was made upon the understanding that all the ducks should be

withdrawn and paid for before May 1st. There is not a particle of evidence that appellant attempted to rescind prior to May 1st. The letter of April 6th, 1910, passed the title in the property to appellant, subject, perhaps, (upon that view of the evidence most favorable to appellant) to the right of examination within a reasonable time. There is no pretense that even at the time of the attempted rescission, appellant had made any examination whatever of the ducks remaining in the storage warehouse, or had made any attempt to make such an examination, although the ducks had then been in its possession and control for seventy-three days. Therefore, even if it be assumed that the contract was executory when made, it had become fully executed on June 18, 1910, for at that date nothing remained to be done except the payment of the agreed price, less the damages, if any, resulting from the breach of warranty, if there was any such breach.

In our opinion the jury were fairly and fully instructed, and we cannot say that the verdict was contrary to the preponderance of the evidence. The judgment of the Municipal Court will therefore be affirmed.

*Affirmed.*