### Kennett, Sparks & Company, Appellee, v. C. E. Knecht, Appellant.

1. SALES—*right to recoup damages for breach of warranty in action on check given for purchase price.* Paragraphs 1 and 2 of section 15, the Uniform Sales Act [Callaghan's 1916 Stat. ¶ 10021(18)], providing for an implied warranty of goods sold, paragraph 3 [Callaghan's 1916 Stat. ¶ 10021(18)], providing that there is no implied warranty after an examination by the buyer, as to

defects which ought to have been revealed by such examination, and section 69 [Callaghan's 1916 Stat. ¶ 10021(72)] relating to remedies in case of breach, considered in an action for the amount of a check given for certain hogs, upon which payment had been stopped after a sale by the buyer for much less than the amount of the check, and *held* that under the circumstances, defendant was not barred from his remedy of recoupment for a breach of warranty, although he retained possession of the hogs and gave the check in payment.

2. SALES—*rights of purchaser for breach of warranty as affected by acceptance.* Where in an action for the amount of a check given for certain hogs, upon which payment was stopped by defendant after he was obliged to sell at a loss because of plaintiff's breach of warranty, it appeared that the defendant had no knowledge of the physical condition of the hogs until after their delivery to a third party, and where plaintiff treated the transaction as a complete sale and refused to take back the hogs after being requested so to do when they failed to pass government inspection, plaintiff could not be heard to insist that defendant should have refused to accept the hogs.

Appeal from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded. Opinion filed May 4, 1921.

WHITAKER, WARD & PUGH, for appellant.

EDGAR P. HOLLY and WALTER C. HEADEN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant is a farmer and stock feeder residing near the Village of Tower Hill, Shelby county. In April, 1918, desiring to purchase a load of stock hogs for feeders on his farm, he visited the office of the commission firm of Rogers-Nichols Commission Company at the National Stock Yards in St. Louis, for the purpose of buying such hogs. The commission company, however, did not deal in stock hogs but introduced him to a Mr. Tippets, of the firm of Kennett, Tippets & Company of which the appellee is the suc-

cessor.  Appellant informed Tippets of his desire to purchase a load of stock hogs that were vaccinated and would pass inspection, to be shipped to his farm for feeders, and the latter told him that the firm did not have that kind of hogs on hand at that time, but agreed to furnish such hogs in a short time.  The witnesses Cox and Frailey were in the employ of the Rogers-Nichols Company, and had introduced appellant to Tippets.  A few days later Tippets told Cox that he had secured a carload of hogs and suggested that Cox look them over.  Frailey and Cox selected 125 hogs which they thought would suit appellant. They were not acting for appellant in the selection of the hogs except as an accommodation to him, and received no remuneration from him for such service. For several days Frailey fed the hogs and appellant paid for the food.  The hogs, however, did not pass the government inspection as they had such high temperatures they could not be vaccinated, and were not permitted to be shipped out for feeders.  When appellant learned this fact he interviewed Tippets, and requested him to take back the hogs, which the latter refused to do, but advised that they be shipped to Indianapolis where hogs were selling on the market for a good price.  Appellant executed his check for $1,992.40 payable to the order of Kennett, Tippets & Company in payment for the hogs, and shipped the same to Indianapolis.  When the hogs arrived in Indianapolis, some of them were dead and most of them were sick.  The net proceeds of the sale of the hogs amounted to $362.05.  Appellant stopped payment on the check and appellee brought this action in assumpsit to recover the amount thereof.  Appellant filed a plea of the general issue and of tender for the sum of $362.05, and also two additional pleas to the effect that the hogs were sold by appellee to defendant as stock hogs, and were to be shipped to appellant's farm, and were warranted to be sound and fit for stock

hogs, and alleged breaches of the warranty. The jury returned a verdict in favor of appellee assessing its damages at $1,992.40. Judgment was rendered on this verdict, to reverse which this appeal is prosecuted.

On behalf of appellee the following instruction was given to the jury:

"No. 1. The jury is instructed, as a matter of law, that if you believe from the weight of the evidence that the defendant was desirous of purchasing pigs of a certain class, kind or weight for stock or feeding purposes and the pigs in question were offered to the defendant and at the time and before he gave his check or received the pigs he had knowledge of their condition, and knew that the pigs were not suited to his purpose, it was his duty to reject the same, and not receive them, and if he failed to reject the same and received and shipped them, then your verdict should be for the plaintiff for the purchase price, together with such protest charges as the evidence discloses and interest from the date of protest."

The fourth, fifth and sixth instructions given for appellee announce like principles of law.

Paragraphs 1, 2 and 3, of section 15 of the Uniform Sales Act [Callaghan's 1916 Stat. ¶ 10021(18)] provide as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"(3) After the buyer has examined the goods there is no implied warranty as regards defects which such examination ought to have revealed."

Section 69 of the Act [Callaghan's 1916 Stat.

¶ 10021(72)] mentions some of the remedies where a breach of warranty takes place. The buyer may, at his option (a) accept or keep the goods, and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; (b) accept or keep the goods and maintain an action against the seller for damages for the breach of warranty; (c) rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods already have been received, return them, or offer to return them to the seller, and recover the price or any part thereof which has been paid. When appellant made known to appellee that he desired to purchase a carload of stock hogs for feeders which would be vaccinated, and would pass government inspection, to be shipped to his farm, there was an implied warranty that the hogs would be reasonably fit for that purpose. Tippets informed appellant that he would have such hogs for him at the end of the week and later told Cox that he had received the hogs, and for him to select them for appellant. This Cox did with the aid of Frailey, and put the hogs selected into a separate pen, where they were fed at appellant's expense. When the government veterinary came to examine the hogs he found that they had temperatures too high to permit of their vaccination, and under these conditions they would not be allowed to be shipped out as feeders. When appellant was notified of this fact he requested Tippets to take back the hogs, which the latter refused to do, but advised him to ship them to Indianapolis to be sold on the market. Appellant did so and gave his check to Kennett, Tippets & Company in payment for the hogs. When he went home he stopped payment of the check. Under this state of the proof, instructions 1, 4, 5 and 6, given on behalf of appellee, are erroneous. Appellee, after refusing to take the hogs back, cannot now be heard to say that it was appellant's duty to reject them after he

became acquainted with their condition. The fact that appellant retained the possession of the hogs and gave his check in payment therefor under the circumstances shown does not bar him from his remedy of recoupment for the breach of warranty. *Wheelock v. Berkeley,* 138 Ill. 153; *Cantrall v. Fawcett,* 2 Ill. App. 569; *Underwood v. Wolf,* 131 Ill. 425; *Doane v. Dunham,* 65 Ill. 512; *Babcock v. Trice,* 18 Ill. 420. Appellant had no knowledge of the physical condition of the hogs until after they had been delivered to Cox in the stock yards, and appellee treated the transaction as a complete sale when Cox and Frailey selected and separated the hogs in question for appellant. This is evidenced by the fact that he refused to take back the hogs after appellant requested him to do so. After such refusal to take back the hogs and rescind the sale, appellee cannot now insist that appellant should have refused to accept them.

For the error in giving the above-mentioned instructions the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*