CHARLES J. DORRANCE, Appellant, *vs.* THE DEARBORN POWER COMPANY, Appellee.

*Opinion filed February 20, 1908—Rehearing denied April 10, 1908.*

1. EVIDENCE—*when smoke ordinance is admissible in action on contract for furnace.* In an action to recover the contract price of a furnace, which the defendant claims does not comply with a warranty that the furnace was to be sufficiently smokeless to comply with the existing city ordinance, the ordinance fixes the standard of the warranty and is admissible in evidence.

2. SAME—*record is the best evidence of prosecution for violating city ordinance.* In an action to recover the contract price of a furnace claimed by the defendant not to comply with the warranty that it would be sufficiently smokeless to comply with the existing city ordinance, parol proof that the defendant was prosecuted and fined for violating such ordinance is not admissible over an objection that the record was the best evidence of prosecution and fine.

3. SAME—*when an error in admitting and rejecting evidence is harmless.* Error in refusing to admit a smoke ordinance in evidence and in permitting parol proof that the defendant was prosecuted and fined for violating the ordinance is harmless, where the uncontradicted evidence is that the furnace for the price of which the plaintiff was suing continually emitted smoke in such quantities

as to violate the smoke ordinance, which it was warranted by the plaintiff not to do.

4. SAME—*witnesses should not be allowed to read from record kept in power plant.* A record kept in a power plant and claimed to show in figures the draft of a furnace from time to time cannot be read from by witnesses who had put down the figures, where the witnesses do not speak from any independent recollection and there is no evidence that the record is a correct record of the facts.

5. CONTRACTS—*the provision of contract requiring ample draft for a furnace construed.* A provision in a contract for the sale of a furnace which bases the warranties upon the condition that an ample draft is furnished by the chimney and connections, does not mean that the purchaser is bound to furnish enough draft to make the furnace comply with the warranties, but does mean that the breach of the warranties must not result from a deficient draft.

6. SAME—*court cannot assume that parties understood words in any other than their ordinary sense.* In the absence of any proof that the parties to a contract used words in any sense other than their ordinary and usual meaning the court is not justified in assuming that they understood the words in any other sense.

7. SAME—*purchaser must act within a reasonable time in case of breach of warranty.* In case of a breach of warranty of a purchased article the purchaser must reject the article, if at all, within a reasonable time, in view of all the circumstances, acts and statements, otherwise he is bound to keep the article and pay the price, less the damage occasioned by the breach of warranty.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. ROLLAND A. RUSSELL, Judge, presiding.

A. W. MARTIN, and EDWARD, H. S. MARTIN, for appellant.

HOLCOMB & McBEAN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles J. Dorrance, appellant, brought this action of assumpsit in the county court of Cook county against the Dearborn Power Company, appellee, to recover the unpaid

balance of the purchase price of a "Dorrance smokeless furnace and grates," sold and delivered by the plaintiff to the defendant under a written contract, and also for the value of additional grates furnished at the request of defendant. The declaration contained the common counts and a special count setting out *in hæc verba* the contract under which the furnace and grates were furnished, and the contract con-contained the following warranties:

"*Proposition.*—We hereby guarantee our furnace and grate-bars, operated as per our instructions, as follows: Based on ample draft being furnished by your chimney and connections.

"*Durability.*—That our construction is durable with ordinary good usage.

"*Smoke.*—To be practically smokeless, or sufficiently so to comply with present city ordinance.

"*Economy.*—To utilize seventy per cent of the available heat units of the coal burned.

"*Capacity.*—To develop fifty per cent above the usual rating (ten square feet to H. P.) of boilers with good results.

"*Fuel.*—To burn to best advantage any sized bituminous coal. Owing to the finer-sized coal being cheaper than larger-sized coal of the same mine it is to the user's benefit to utilize same, therefore the Dorrance grates and furnaces are made to burn such fine-sized coal as well as coarser, giving equal efficiency and capacity with same, in proportion to calorific value, as from coarser-sized coal. This great advantage is not possessed to this extent by any other furnace in use.

"All statements in this proposal are warranties, and in case of failure of any said warranties we agree to make the same good.

"We further agree with the said Dearborn Power Company and its assigns of said furnaces to replace any defects of workmanship and material, if such defects appear within

two years from the date of installment of said furnaces: *Provided, however,* that such defects shall not be caused by the fault of the Dearborn Power Company or its agents or employees: *And provided further,* that said Dearborn Power Company shall give prompt notice, by mail, to us, at our present Chicago address, of failure of any warranties or existence of such defects."

The price fixed by the contract for the furnace and grates was $1300, payable one-half when the furnace was ready for firing up and the balance in forty-five days. The defendant had paid the one-half, $650, and pleaded the general issue, with a notice of set-off, in which it claimed the $650 so paid on the ground that the plaintiff had failed to perform the conditions of his contract and the defendant had rescinded the contract and rejected the furnace and grates, and damages for the breach of the warranties were also claimed by the notice. The parties waived a jury and the cause was tried by the court, resulting in a finding in favor of the defendant on the set-off of $578.68, which was the amount paid, with a deduction of $71.32 for the extra grates. The plaintiff appealed to the Appellate Court for the First District, and the judgment was there affirmed. The claim of the plaintiff and the set-off of the defendant aggregating more than $1000, a further appeal was allowed to this court.

The furnace was to be practically smokeless, or sufficiently so to comply with the existing city ordinance, and the city ordinance therefore fixed the standard of the warranty. The ordinance was not in evidence, and when offered by the plaintiff an objection to it was sustained. The court also overruled objections of the plaintiff to questions put to a witness of the defendant as to whether the defendant was prosecuted for violation of the ordinance, and allowed the witness to testify that there was a prosecution and that a fine was imposed on the defendant for violating the ordinance. The objection was that the record was the best

evidence and the court erred in overruling it. Counsel seek to justify the ruling on the ground that the plaintiff testified that he paid a fine for violation of the smoke ordinance, but he explained at the time that his reason for paying was, that he had made an agreement with the smoke inspector to continue the case and the engineer of the defendant had left the city on his assurance of the continuance. In making objection to the ordinance and the evidence the plaintiff insisted that there was no admission of a violation of the ordinance. It did appear, however, at the trial, that the furnace was not practically smokeless, and it was admitted that it produced dense black smoke at times. There was no contradiction of the evidence for the defendant that the chimney smoked continually and to such an extent as to violate the ordinance, so that the errors in rejecting the ordinance and permitting parol proof of a conviction ought not to work a reversal.

The warranty, however, that the furnace would be sufficiently smokeless to comply with the city ordinance and to accomplish the other results stated in the contract was not absolute but was conditioned upon ample draft being furnished by the chimney and its connections. The plaintiff contended that the failure to fulfill the warranties was due to the fact that the chimney and connections did not furnish ample draft for the furnace. The plaintiff testified that the draft at the base of the chimney was good and ample and always had been, and that the engineer of defendant said when the order was taken that the draft at the base of the chimney was seven-eighths of an inch, which was confirmed by the plaintiff by measurement. The engineer never succeeded in getting the guaranteed capacity from the furnace, and the plaintiff charged that, as well as the smoke, to the want of draft. The witnesses for the plaintiff testified that it was because there was not draft sufficient to allow enough air to go through the grates to properly burn the coal, which was due in some way to the connections of the chimney.

The evidence for plaintiff was that the draft at the breeching would be about double what it was over the fire, and if the draft was one-half inch over the fire it would be from seven-eighths to one inch in the breeching; that the furnace required a draft of one-half inch over the fire and a minimum of three-fourths of an inch taken at the breeching, and that tests of the draft taken at different times showed something less than two-tenths of an inch over the fire and less than four-tenths of an inch in the breeching. According to the witnesses for the plaintiff the failure of the furnace to fulfill the warranties was due to the failure of the condition that the chimney and connections should furnish ample draft.

The defendant claimed that there was ample draft furnished by the chimney and connections and that the failure was not due to any deficiency in that respect. Witnesses for the defendant testified that there was not room enough in the space which defendant had for the furnace, and that there was not combustion surface large enough and grates large enough to burn sufficient coal to get the capacity out of the boilers. They testified that there was not space sufficient to allow a combustion chamber large enough. There was not much draft at first, but some changes were made by cutting off angles in the breeching and making alterations to increase the draft, and a witness testified that before the changes the draft was thirty-two hundredths of an inch, and after the changes it was seventy-four hundredths, and for several days never went below sixty-eight hundredths. The principal means by which the defendant was allowed to prove the draft from time to time was by permitting witnesses to read from a record kept in the power plant, which was supposed to show various things, such as the steam pressure, feed, etc., including the draft. These things purported to be set down every hour, and there was evidence that they were so set down as the readings were taken. The court then permitted the witnesses who set down the figures to look at the record and read from it

what the draft was, saying that it read 49, 48, 46, 40, etc.
The record was not used to refresh the memories of the witnesses and they did not speak from any independent recollection after looking at it. They did testify that they set down the figures at the time of the occurrence, but no witness testified that the record was a correct and accurate record of the facts. The record was not admissible under any rule relating to books of account or any statute making a record evidence, and it did not have the sanction of an oath as to its truth. The court erred in admitting it. (*Diamond Glue Co.* v. *Wietzychowski,* 227 Ill. 338.) The record so read showed that the draft, after the change, was about as great, and sometimes greater, than plaintiff contended was necessary and ample. The evidence related to the vital question in the case.

The plaintiff submitted a proposition of law that he was entitled to recover even if the furnace and grates were not smokeless, or did not utilize seventy per cent of the available heat units of the coal burned, or did not develop above the usual rating of the boilers, provided the draft furnished by the defendant's chimney and its connections was not ample, and the court added the words, "in the sense in which the contracting parties understood the term 'ample.'" There was no evidence tending to show that the word "ample" was used by the parties with any other meaning than its ordinary meaning of plentiful, or fully sufficient for the purpose. There is no reason for saying that the defendant was only to furnish a draft as ample as its chimney and connections were capable of producing, or that such was the measure of the defendant's obligation under the contract. If the parties meant that plaintiff was to furnish a smokeless furnace and produce a certain capacity with the chimney and connections, such as they were and with whatever draft they might furnish, the condition would be meaningless and would never have been inserted in the contract. The term did not mean that the defendant must furnish enough draft

to make the furnace smokeless, but it did mean that a failure of the furnace to prove practically smokeless and develop the capacity stated must not result from deficient draft. The modification would raise an inference that the court had in mind some understanding of the parties different from the contract by which the warranties were conditioned upon the chimney and connections furnishing plenty of draft. The proposition as presented by the plaintiff stated the law correctly.

The third proposition submitted by the plaintiff declared the rule of law that if the warranties were broken and the defendant desired to reject the furnace and grates it must do so within a reasonable time, and if it failed to do so it became obligated to pay the contract price, less the damage, if any, shown by the evidence to have resulted on account of the breaches of the warranties, and the court added the modification, "unless the plaintiff by his own conduct extended the time for keeping the furnace." There was no evidence of any extension of time by the plaintiff for any specified period, and the rule of law stated in the proposition was correct. In determining what is a reasonable time in which to reject an article on account of a breach of warranty, all the circumstances, the conduct of the seller, and what he has said, are to be taken into consideration; but the buyer is bound to reject the article, if at all, within a reasonable time in view of all such circumstances, acts and statements, otherwise he is bound to keep the article and pay the price, less the damages occasioned by the failure of the warranty. *Underwood* v. *Wolf,* 131 Ill. 425; *America Theater Co.* v. *Siegel, Cooper & Co.* 221 id. 145.

The judgments of the Appellate Court and the county court are reversed and the cause is remanded to the county court.

*Reversed and remanded.*