**Philo A. Orton and Henry G. Steinbrenner, trading as Orton & Steinbrenner, Appellants, v. Artesian Stone & Lime Works Company, Appellee.**

**Gen. No. 17,916.**

1. SALES, § 153*—*When warranted goods are accepted.* An executory contract for the sale of two electric cranes provided that they should be erected by the seller, who was to furnish a man to instruct the buyer's operators and who warranted the work the cranes would perform. The cranes were constructed and operated alike, giving double opportunities for inspection and test, and were operated by the buyer during a period of over two months in the busy season and for its use and benefit. At the expiration of such time the buyer declined to accept the cranes on the ground of a breach of the warranty as to the work they would perform. *Held,* the buyer had accepted the cranes and was liable for the purchase price, and instructing the buyer's employes was not retaining control and ownership of the cranes.

2. SALES, § 276*—*time when rejection must be made.* Where an executory contract for the sale of electric cranes to be erected by

the seller does not provide for a test run, the buyer cannot reject the cranes for a breach of warranty after a reasonable time, under all the circumstances, necessary for testing them.

3. SALES, § 390*—*when buyer not paying is not in default.* Where a contract of sale provides the buyer is to pay one-half the purchase price on presentation of bill of lading, payment when the goods were shipped, where the bill of lading was not presented until after the buyer attempted to reject the goods.

Appeal from the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed November 24, 1913.

CHARLES CENTER CASE, JR., for appellants.

JOHN EDWARD WATERS, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This was a case of the first class in the Municipal Court of Chicago brought by the appellants to recover from the appellee the sum of $14,000, with interest thereon, the purchase price of two electric cranes, and also certain extras for materials and services amounting to about $1,000, duly itemized in appellants' statement of claim. The appellee claimed that the two cranes failed to fulfil appellants' guaranties and were thereupon rejected; and by reason of certain charges, expenses, etc., thereby caused it, amounting to about $1,100, the appellee filed a set-off to recover therefor. On a hearing by the court, without a jury, the court found the issues for the appellee and entered a judgment on the findings against appellant for $710.54.

On December 20, 1909, the appellants wrote the following proposal to the appellee:

"In reply to your request, we are pleased to quote you upon 2 electric broad gauge revolving cranes, in accordance with attached specifications and blue print, erected complete upon your bins, with all wiring upon crane done and including the services of an Expert Superintendent to instruct your operators in the hand-

ling of the machines, the sum of Fourteen Thousand Dollars ($14,000). We can make delivery of complete equipment in 70 days from receipt of order. Terms to be 50% upon presentation of bill of lading and the remaining 50% 60 days thereafter. Trusting that we may be favored with your valued order, we are,
Yours very truly.''

With this proposal were a blue print and ''Specifications for Electric Revolving Cranes for Artesian Stone & Lime Works Co.,'' the specifications covering nearly four closely printed pages of the abstract. The concluding paragraph thereof was as follows:

''We will guarantee that under reasonably favorable conditions and with a good operator and current of proper voltage supplied at the motor 75 trips of the bucket from the barge to the bins can be obtained per hour. We will also guarantee that under similar conditions, 150 to 200 tons of stone can be unloaded from the barge to the bins per hour. We will also guarantee material and workmanship and will agree to replace F. O. B. cars our shops any parts proving defective within six months from date of installation.''

The said proposition was accepted by the appellee in writing January 13, 1910. Work was not begun by the appellants on the said cranes until about April 1, 1910, and they were not delivered to the appellee until June, 1910, beyond the time limit of seventy days for the delivery thereof.

The appellee was engaged in the business of quarrying and selling crushed stone, with a quarry and place of business at Summit, Illinois, near the Chicago drainage channel. It proposed to erect bins at its yards on the north branch of the Chicago river near the intersection of Barry and Campbell avenues, and hereinafter referred to as the North Side yard, and at its yards on the south branch of the Chicago river near the intersection of 37th and Iron streets, and hereinafter referred to as the South Side yard. By means of three boats or barges, owned by the appellee, stone was brought up the canal into the river to the yards

in question and the said cranes were to be used to unload said boats and place the stone into the bins, from which it would be loaded into wagons by gravity.

The two cranes in question were made by a company with shops at Harvey, Illinois, of which the appellant Steinbrenner was superintendent, and both appellants were stockholders. One of the cranes was shipped from Harvey May 31st, June 2nd and 4th, to the North Side yard and there erected and started in operation about July 5th. The other crane was shipped June 9th and 14th to the South Side yard and there erected and started in operation about July 18th. It naturally took time to adjust and get the said cranes in working order. There was some difficulty in operating the cranes because of certain parts of the machinery breaking, accidents, and other causes not clear, being the subjects of much testimony more or less conflicting. On September 21st the appellee wrote the appellants declining to accept either of the cranes on the ground that they "fail to and are incapable of doing the work for which they were made and purchased," and requested appellants to take them away. The appellants failing to so do, the appellee took them down and cared for them at the respective yards.

The record is a voluminous one. The abstract consists of nearly four hundred pages. Both counsel have filed long and exhaustive briefs, in all more than five hundred pages. The testimony on many points is conflicting, and a great many legal propositions are advanced and argued in the briefs. To analyze the evidence and comment, even briefly, upon the legal points raised would require an opinion of unpardonable length. Suffice it to state that we have given the abstracts and briefs careful and patient study and shall only attempt to indicate the controlling features of the case and our opinion thereon.

That the time limit for delivery of the cranes within seventy days after the receipt of the order was waived,

is, from all the evidence and circumstances in the case, too obvious to require any serious comment.

The principal and controlling question in the case is, were the cranes in question accepted by the appellee? If so, then the appellee was bound to pay the purchase price thereof, less, of course, the damages it might be able to establish by way of recoupment. *Wolf Co. v. Monarch Refrigerating Co.*, 252 Ill. 491-508.

Mechem on Sales, in discussing an executory contract with a warranty, says, section 818: "The buyer in these cases is not obliged to rescind; he may do so, or he may retain the chattel and have his action for the damages. If he would exercise his option, he must do so with promptness after his discovery of the breach of warranty. He has a reasonable time, considering all of the circumstances, within which to test the chattel to ascertain whether it conforms to the warranty; but if it does not, he must promptly return or offer to return the article to the seller in rescission of the contract."

Also section 1380: "The acceptance need not be express. It may be, and, in the cases coming before the courts, ordinarily is, implied or denied in reliance upon the circumstances of the case.

The fact most frequently relied upon as the ground of an implied acceptance is that the buyer, after receiving the goods, has retained them without objection for an unreasonable period. As has been seen, the buyer has the right to inspect the goods and is then bound to accept them if they conform to the contract, or to reject them if they do not. He is bound, however to do one thing or the other, and that within a reasonable time; and if he simply remains inactive, neither accepting or rejecting within a reasonable period, the law will deem his inaction to be acquiescence, and he will not afterwards be permitted to reject," and cites many authorities in support thereof. In *Dorrance v. Dearborn Power Co.*, 233 Ill. 354, the

Court says: ''In determining what is a reasonable time in which to reject an article on account of a breach of warranty, all the circumstances, the conduct of the seller, and what he has said, are to be taken into consideration; but the buyer is bound to reject the article, if at all, within a reasonable time in view of all such circumstances, acts and statements, otherwise he is bound to keep the article and pay the price, less the damages occasioned by the failure of the warranty,'' citing authorities.

In *Underwood v. Wolf,* 131 Ill. 425, the Court says: ''In Benjamin on Sales, Vol. 2, sec. 1356 (4th Am. ed.) it is said: 'The buyer will also lose his right of returning goods delivered to him under a warrant of quality, if he has shown by his conduct an acceptance of them, or if he has retained them a longer time than was reasonable for a trial, or has consumed more than was necessary for testing them.' * * *

In *Doane v. Dunham,* 65 Ill. 512, and same case, 79 id. 131, the distinction between executory and executed contracts was recognized, and it was held that, in the former, the law gives the buyer a reasonable time for making an examination of the chattels sold, that it is for the jury to determine under all the circumstances what is such reasonable time, that a failure to make the examination within a reasonable time may preclude the buyer from offering the property back, rescinding the contract and avoiding payment on that ground, but will not deprive him of the right to rely upon the breach of the warranty for damages. The only difference between that case and the one at bar is, that there the *law* gives time for examination or test, while here the *contract* fixes the time. The same rule, however, will apply to both cases. (*Estep v. Fenton,* 66 Ill. 467.)''

In the contract in the case at bar there was no clause in the contract providing for a test run, and under the rules above quoted the appellee could not reject the

cranes after a reasonable time under all the circumstances necessary for testing same. The crane at the North Side yard was operated over a period of more than eleven weeks, unloading during that time fifteen boat loads of stone and putting same into the bins. The crane at the South Side yard was operated over a period of nine weeks, unloading during that time eighteen boat loads of stone and placing same into the bins. The cranes were constructed and operated alike; thus the appellee had double opportunities for inspection and testing them. The appellee operated the cranes at different times by its own employes, and much of the time under the instruction of the appellants. Thus instructing appellee's employes was by no means retaining the control and ownership of the cranes, but was in performance of a specific provision of the contract. The cranes were operated during the two months, or more, of the busy season of the appellee's business and for its use and benefit. The conditions and operations thereof during all this time were plain and apparent to the appellee; and it seems clear to us that under all the facts and circumstances it had not the right at so late a date as September 21st to reject the cranes. Of course we appreciate the appellee's contention that it never accepted the cranes by word or act and delayed the rejection thereof until September 21st for the purpose of giving the appellants every opportunity to perfect the operation of the cranes and fulfil their guaranties. We have given this position, with all the evidence bearing thereon, due and careful consideration and think the same cannot be maintained. There is much testimony, which we do not attempt to here detail, that indicates to us the contrary.

We conclude that under all the facts and circumstances in evidence the rules of law above mentioned are plainly applicable and the appellee must be held to have accepted said cranes and is therefore liable therefor.

We are of the further opinion that a clear preponderance of the evidence shows "that under reasonably favorable conditions and with a good operator and current of proper voltage supplied at the motor," the guarantee of seventy-five trips of the bucket from the boats to the bins per hour was obtained. Whether that speed could be obtained with full buckets and thus fulfil the guarantee of one hundred and fifty to two hundred tons of stone unloaded per hour from the boats to the bins, we have not been able to satisfactorily determine. The contract specifically provided the remedy for defective parts. From all the evidence pertaining to breakage of material and the quality of the workmanship, we are not prepared to hold that the appellee did not prove that the appellants failed in their guarantee in a few instances as to workmanship, and for which it may be entitled to some allowance.

The bills of lading were not delivered to the appellee until after September 21st; and therefore the appellee was not in default by reason of not paying the fifty per cent. of the contract price of the cranes when shipped.

There was much incompetent testimony introduced, but as there can be no reason why it should be again presented on another trial it needs no discussion, and especially as the case was tried by the court without a jury; and, of course, in our decision of the case we have not considered such testimony.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*