BRULE C. E. & E., INC., Plaintiff-Appellant, *v.* PRONTO FOODS CORPORATION, Defendant-Appellee.

(No. 55298;

First District—December 15, 1971.

Mergan, Lanoff, Cook & Madigan, of Chicago, (James T. Ryan and Samuel M. Lanoff, of counsel,) for appellant.

Marks, Marks, & Kaplan, of Chicago, (William S. Kaplan, of counsel,) for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This action was brought by Brulé C. E. & E. Inc. (hereafter referred to as Brulé) against Pronto Foods Corporation (hereafter referred to as Pronto) to recover $10,000 as the unpaid portion of the purchase price for an incinerator. The parties waived trial by jury, and the matter proceeded to trial on January 19, 1970. At the close of plaintiff's evidence, the court upon Pronto's motion found the issues in favor of the defendant and entered judgment accordingly from which the plaintiff, Brulé, appeals. No questions are raised on the pleadings.

On August 22, 1966, Brulé submitted a proposal to Pronto for the lease of one Brulé Series F G 4—6 Heavy Duty Industrial Type of Incinerator with a capacity of burning 850 pounds per hour of loose paper, wood, and cardboard, and this proposal was accepted by Pronto on September 27, 1966. Subsequently on November 25, 1966, the parties entered into a memorandum of agreement under which Pronto agreed to purchase the incinerator at a price of $20,052.00 plus sales tax rather than to lease the equipment. Brulé was required under the agreement to obtain an air pollution permit.

The record reveals that an incinerator with a capacity of burning 850 pounds per hour of loose paper, wood, and cardboard was assembled

and made operational on Pronto's premises in January of 1967 and that on March 8, 1967, a permit was issued by the City of Chicago for the installation on Pronto's premises of an incinerator which was described in the permit as having a rating of 640 pounds per hour.

The evidence introduced by the plaintiff established the existence of the contract, the installation of the incinerator with a capacity of 850 pounds per hour, the procurement of a permit for a unit with a rating of 640 pounds per hour, the use of the incinerator by Pronto for a period of over two years, and the non payment of the balance of the purchase price. At the conclusion of the plaintiff's evidence the defendant moved for a finding in its favor. The trial judge allowed the motion on the ground that Brulé had not complied with the contract because it had failed to obtain a permit to operate the unit at the rate of 850 pounds per hour.

Brulé on appeal contends that the evidence introduced by it was sufficient to establish a *prima facie* case. Pronto in response argues that Brulé is not entitled to recover (1) because it failed to perform an essential condition of the contract, the procurement of a permit with a rating of 850 pounds per hour and (2) because Brulé's performance without such a permit was unlawful.

■■ The rights of the buyer upon the delivery of goods which do not conform to the contract are outlined in section 2—601 of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 2—601) which provides:

"§ 2—601. Buyer's Rights on Improper Delivery

Subject to the provisions of this Article on breach in installment contracts (Section 2—612) and unless otherwise agreed under the sections on contractual limitations of remedy (Sections 2—718 and 2—719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

(a) reject the whole; or

(b) accept the whole; or

(c) accept any commercial unit or units and reject the rest."

The buyer upon improper tender may accept all the goods, reject all the goods, or accept part and reject part. Once the goods are accepted, however, the buyer must pay for them at the contract rate unless acceptance is revoked. Section 2—607 (1) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 2—607(1)). The acts which constitute acceptance of goods are set forth in Section 2—606 of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 2—606) as follows:

"2—606. What Constitutes Acceptance of Goods

(1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(b) fails to make an effective rejection (subsection (1) of Section 2—602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

In the case at bar, the incinerator was installed on Pronto's premises in January of 1967, and Pronto at that time began using the unit. An air pollution permit was issued on March 8, 1967. Pronto was fully aware of the contents of the permit as is evidenced by the fact that Gerry Sayell, Administrative Assistant to the President of Pronto, specifically referred to the permit and to the rating given the unit therein in a letter dated March 23, 1967. Pronto, nevertheless continued to use the incinerator. In a letter dated September 6, 1967, Gerry Sayell wrote, "* * * the incinerator is operating satisfactorily and I see no reason why the Air Pollution Department should not approve it on September 7, 1967 when they make their inspection." After posing several questions the letter went on to say:

"We have both spent a considerable amount of money in making this unit operable. It has been a long process of experimentation and trial by error.

·I am sure that we both will be happy to rid ourselves of this albatross. Please contact me so we can resolve our differences and close this matter."

Gerry Sayell when called as an adverse witness under Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 60) stated that Pronto did not cart away combustible material because all such material was burned in the incinerator and that the unit was still operating as of January 19, 1970, the date of trial.

Pronto through its actions in using and repairing the unit and through its correspondence demonstrated acceptance of the incinerator in all three of the methods set forth in Section 2—606 of the Uniform Commercial Code. Pronto could have accepted or rejected the incinerator, but it could not do both since one is totally inconsistent with the other. There is no indication in the record that Pronto ever attempted to reject the unit; and Pronto used the incinerator for a period of over two years.

■■ Repairing, correcting, and altering a purchased unit which is deemed "satisfactory" by the buyer is an indication of acceptance. In *Wolf Co. v. Refrigerating Co.*, 252 Ill. 491, 96 N.E. 1063, the Monarch Refrigerating Company, the purchaser of a refrigeration plant, sent a notice of rejection of the plant to the seller, but it, nevertheless, continued to use and operate the equipment. The seller brought suit to recover the balance of the purchase price. Judgment was entered in favor of the seller, and on appeal Monarch contended that it had properly rejected the plant. The Supreme Court in rejecting this contention stated, 252 Ill. 491, 502—3, 96 N.E. 1063, 1066—7:

> Even though the appellant had determined to reject the plant, and though its letters to the appellee and its attorneys be regarded as sufficient notice, in writing, of such rejection, it could not retain possession of the property and use it for its own profit in its business and at the same time insist upon the rejection. The two things are utterly inconsistent. While the appellant is actually accepting and using the plant its words of rejection are unavailing. Where machinery has been bought on approval, tried, found defective and unsatisfactory and notice of rejection has been given, and where, nevertheless, the vendee has continued to use the machinery, such use amounts to a waiver of the right to return the machinery and an election to accept it.

■■ We hold that Pronto could not retain possession of the incinerator, use the equipment in its business for an extended period of time, and at the same time claim rejection. The evidence introduced by Brulé was sufficient to establish a *prima facie* case for recovery of the balance of the purchase price, and it was, therefore, error to find for the defendant and enter judgment at the close of the plaintiff's case.

■■ Pronto further contends that the installation of an incinerator with a capacity of burning 850 pounds of refuse per hour under a permit for a unit in which the maximum quantity of refuse to be burned per hour is 640 pounds is a violation of the Municipal Code of the City of Chicago and consequently that a court should not condone such a performance by enforcing the underlying contract for the benefit of the party acting in violation of the ordinance. Under Section 17—48 of the Municipal Code of the City of Chicago (as effective on January 1, 1967) it *is* unlawful to install any fuel-burning, combustion, or process equipment without obtaining an installation permit. Under Section 17—49 of the Code detailed plans and specification of the unit must be submitted to the City including "the maximum quantity of [refuse] to be burned in an hour." Brulé obtained a permit, and the only objection raised to this permit is that the planned maximum use of the incinerator was described as 640 pounds per hour. As long as the unit was used at the rate

of less than 640 pounds per hour, there was no violation of the ordinance, and consequently Brulé's installation of the incinerator, prior to any use, was not a violation of the ordinance. The cases cited by Pronto in which courts declined to enforce a contract because performance by a party was unlawful are inapplicable on their facts.

■■ The defendant alleged in his amended answer that the incinerator was defective and unfit both in material and in workmanship and that it expended large sums of money in making necessary repairs. Once acceptance of the incinerator occurred, the buyer's remedy is limited to recoupment in mitigation of his indebtedness which is a matter of proof.

The motion to find for the defendant at the close of plaintiff's evidence should not have been granted. The judgment for the defendant is reversed and the cause is remanded with direction to proceed as though the motion had been denied by the trial court or waived. Section 64(5) of the Civil Practice Act. (Ill. Rev. Stat. 1969, ch. 110, par. 64(5).)

Reversed and remanded with directions.

ADESKO, P. J., and DIERINGER, J., concur.